Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1901 S. Bascom Avenue, Suite 350
Campbell, CA 95008
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

(Co-counsel listed on signature page)

*Attorneys for Plaintiff*

FILED   # 99

MAY 04 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

CV 12-02272 PSG

| | |
|---|---|
| JUDE TRAZO, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION AND REPRESENTATIVE ACTION** |
| v. | **COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF** |
| NESTLÉ  USA, INC. and NESTLÉ  HOLDINGS, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, through his undersigned attorneys, brings this lawsuit against Defendants as to his own acts upon personal knowledge and as to all other matters upon information and belief.  In order to remedy the harm arising from Defendants' illegal conduct, which has resulted in unjust profits, Plaintiff brings this action on behalf of a nationwide class of consumers who, within the last four years, purchased Nestlé "Coffee-Mate" powder coffee creamer labeled "0g Trans Fat" but which also states on the label that the product contains more than 4 grams of saturated fat or 13 grams of fat per 50 grams (referred to herein as "Misbranded Food Products").

*Class Action Complaint*

**INTRODUCTION**

1.      Every day, millions of Americans purchase and consume packaged foods. Identical federal and California laws require truthful, accurate information on the labels of packaged foods. This case is about companies that flout those laws. The law is clear: misbranded food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of their purchase price.

2.      Defendants have pursued a "Nutrition, Health, and Wellness strategy" based on their "assessment that nutritional awareness and the desire for improved health and wellness will increasingly drive consumer choice." www.Nestle.com/CSV/Nutrition/Pages/Nutrition.aspx.

3.      Pursuant to this strategy, Defendants stated that they would "renovate products for nutrition and health considerations" which would lead to "value" including "brand awareness and recognition; consumer loyalty, long-term enhanced growth, market share and profitability." *Id.*

4.      Defendants' key to achieving this is to convince consumers that they can "use Nestlé Products (like candy, chocolate, frozen pizza, *etc.*) as part of a healthy and enjoyable diet." *Id.* As made clear in the 2010 Nestlé Annual Report, "[e]ach of our product categories, from Chocolate to Baby Food, has a specific strategy to ensure that it can be the nutrition leader in its space," and "Nestlé's Food and Beverage business has ... the know-how ... to bring nutrition, health and wellness arguments to all food and beverage categories." 2010 Nestlé Annual Report at 12, 18.

5.      Recognizing that "[t]he success of the Nestlé Group depends on its ability ... to offer high-quality products that appeal to the consumer preferences," *id.* at p. 36, Defendants have repositioned their food products as healthy, nutritious and natural by making false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.

6.      As part of this nutrition, health and wellness strategy, Defendants make a number of claims about their products. Defendants' reason for doing so was driven by their pecuniary interests.

7.     If a manufacturer is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled.  As described more fully below, Defendants have made, and continue to make, false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.  These laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional benefit over otherwise similar food products that do not claim such benefits.  More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease or health-related condition.

8.     For example, Nestlé Original Coffee-Mate improperly makes a "0g Trans Fat" nutrient content claim despite containing 0.5 grams of saturated fat per 2 grams or more than 12 grams of saturated fat per 50 grams.  This level of saturated fat bars the making of a nutrient content claim without a disclosure statement.  The front label of the Coffee-Mate original flavor states:



9.     The back of this same label states that the product contains over 0.5 grams of saturated fat per serving size.  However, the serving size utilized is only 2 grams.  Thus on a per

50 gram basis the product is well over the 4 gram saturated fat limit without the required disclosure mandated by law, although that fact is not obvious to the consumer and requires more than one mathematical calculation to figure out. These same unlawful nutrient content claims are on each label of the Misbranded Food Products.

10.     Because of the saturated fat content of the Misbranded Food Products, pursuant to federal and California law, Defendants must include a warning statement adjacent to their trans fat and cholesterol nutrient claims that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium.   No such disclosure statement currently exists on these products. Therefore, they are misbranded as a matter of federal and California law and cannot be sold because they are legally worthless.

11.     Identical federal and California laws regulate the content of labels on packaged food.   The requirements of the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law").   California Health & Safety Code § 109875, *et seq.*   Under FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling.   21 U.S.C. § 343(a).

12.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.   Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.   If any one representation in the labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement.   "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951).   Under the FDCA, it is not necessary to prove that anyone was actually misled.

13.     In promoting the health benefits of their Misbranded Food Products, Defendants have made, and continue to make, false and deceptive claims on their Misbranded Food Products in violation of federal and California laws that govern the types of representations that can be made on food labels.   In particular, in making their unlawful "0 grams Trans Fat" and

1  "Cholesterol Free" nutrient content claims on their Misbranded Food Products, Defendants have

2  violated nutrient content labeling regulations mandated by federal and California law which

3  require a disclosure of nutrients (fat, saturated fat, cholesterol, and sodium) present in a food at a

4  level that the FDA has concluded increases the risk of diet-related disease or health-related

5  condition, required whenever a nutrient content claim is made.

6      14.    Defendants have made, and continue to make, unlawful nutrient content claims on

7  food labels of their Misbranded Food Products that are prohibited by federal and California law

8  and which render these products misbranded.  Under federal and California law, Defendants'

9  Misbranded Food Products cannot legally be manufactured, advertised, distributed, held or sold.

10  Defendants' false and misleading labeling practices stem from their global marketing strategy.

11  Thus, the violations and misrepresentations are similar across product labels and product lines.

12      15.    Defendants' violations of law are numerous and include: (1) the illegal

13  advertising, marketing, distribution, delivery and sale of misbranded Defendants' Misbranded

14  Food Products to consumers in the United States; (2) the failure to properly disclose the high

15  levels of saturated fat in their Misbranded Food Products on the Misbranded Food Products'

16  packaging and labeling as required by law; and (3) the failure to include statements on the

17  Misbranded Food Products packaging and labeling that are mandated by law.

18                              **PARTIES**

19      16.    Plaintiff is a resident of San Jose, California who purchased Defendants'

20  Misbranded Food Products in California during the four (4) years prior to the filing of this

21  Complaint (the "Class Period").

22      17.    Defendant Nestlé USA, Inc. ("Nestlé USA") is a privately held Delaware

23  corporation with its corporate headquarters and principal place of business in Glendale,

24  California. It is owned by Defendant Nestlé Holdings.

25      18.    Defendant Nestlé Holdings, Inc. ("Nestlé Holdings") is a privately held Delaware

26  corporation with its principal place of business in Glendale, California.  Nestlé USA is 100%

27  owned by Nestlé Holdings.  The Chairman, CEO and President of Nestlé Holdings is California-

28  based Bradley Alford, who holds the same titles for Nestlé USA.  The California-based CFO of

1    Nestlé Holdings is the CFO of Nestlé USA.  The California-based Secretary of Nestlé Holdings is

2    the Secretary of Nestlé USA.

3        19.    Defendants are leading producers of retail food products, including Misbranded

4    Food Products. They sell their food products to consumers through grocery and other retail stores

5    throughout California and the United States.

6        20.    California law applies to all claims set forth in this Complaint because Nestlé USA

7    and Nestlé Holdings are residents of California and all of the misconduct alleged herein was

8    contrived in, implemented in, and has a shared nexus with California.   The formulation and

9    execution of the unlawful practices alleged herein, occurred in, or emanated from California.

10   Accordingly, California has significant contacts and/or a significant aggregation of contacts with

11   the claims asserted by Plaintiff and all Class members.

12   **JURISDICTION AND VENUE**

13       21.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)

14   because this is a class action in which:  (1) there are over 100 members in the proposed class;

15   (2) members of the proposed class have a different citizenship from Defendants; and (3) the

16   claims of the proposed class members exceed $5,000,000 in the aggregate.

17       22.    The Court has jurisdiction over the federal claim alleged herein pursuant to 28

18   U.S.C. § 1331, because it arises under the laws of the United States.

19       23.    The Court has jurisdiction over the California claims alleged herein pursuant to 28

20   U.S.C. § 1367, because they form part of the same case or controversy under Article III of the

21   United States Constitution.

22       24.    Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to

23   28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is

24   between citizens of different states.

25       25.    The Court has personal jurisdiction over Defendants because a substantial portion

26   of the wrongdoing alleged in this Complaint occurred in California, Defendants are authorized to

27   do business in California, have sufficient minimum contacts with California, and otherwise

28   intentionally avail themselves of the markets in California through the promotion, marketing and

1  sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible

2  under traditional notions of fair play and substantial justice.

3       26.    Because a substantial part of the events or omissions giving rise to these claims

4  occurred in this District and because the Court has personal jurisdiction over Defendants, venue is

5  proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

6  <strong>FACTUAL ALLEGATIONS</strong>

7      **A.**    <u>**Identical California And Federal Laws Regulate Food Labeling**</u>

8       27.    Food manufacturers are required to comply with identical federal and state laws

9  and regulations that govern the labeling of food products.  First and foremost among these is the

10  FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

11       28.    Pursuant to the Sherman Law, California has expressly adopted the federal

12  labeling requirements as its own and indicated that "[a]ll food labeling regulations and any

13  amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993,

14  or adopted on or after that date shall be the food regulations of this state."  California Health &

15  Safety Code § 110100.

16       29.    In addition to its blanket adoption of federal labeling requirements, California has

17  also enacted a number of laws and regulations that adopt and incorporate specific enumerated

18  federal food laws and regulations.  For example, food products are misbranded under California

19  Health & Safety Code § 110660 if their labeling is false and misleading in one or more

20  particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails

21  to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and

22  regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if

23  their labeling fails to conform with the requirements for nutrient content and health claims set

24  forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California

25  Health & Safety Code § 110705 if words, statements and other information required by the

26  Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are

27  misbranded under California Health & Safety Code § 110735 if they are represented as having

28  special dietary uses but fail to bear labeling that adequately informs consumers of their value for

that use; and are misbranded under California Health & Safety Code § 110740 if they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

### B.  FDA Enforcement History

30.  In recent years the FDA has become increasingly concerned that food manufacturers were disregarding food labeling regulations. To address this concern, the FDA elected to take steps to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority.

31.  In October 2009, the FDA issued a *Guidance For Industry: Letter regarding Point Of Purchase Food Labeling* to address its concerns about front of package labels ("2009 FOP Guidance"). The 2009 FOP Guidance advised the food industry:

> FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading. The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.

> It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

> ... Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not

consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

32.   The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

33.   Despite the issuance of the 2009 FOP Guidance, Defendant did not remove the unlawful and misleading food labeling claims from their Misbranded Food Products.

34.   On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" (hereinafter, "Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

> In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages. Our citizens appreciate that effort, and many use this nutrition information to make food choices. Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.

> With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections. ...

> As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.

At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices. For example:

- Nutrient content claims that FDA has authorized for use on foods for adults are not permitted on foods for children under two. Such claims are highly inappropriate when they appear on food for infants and toddlers because it is well known that the nutritional needs of the very young are different than those of adults.
- Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.
- Products that claim to treat or mitigate disease are considered to be drugs and must meet the regulatory requirements for drugs, including the requirement to prove that the product is safe and effective for its intended use.
- Misleading "healthy" claims continue to appear on foods that do not meet the long- and well-established definition for use of that term.
- Juice products that mislead consumers into believing they consist entirely of a single juice are still on the market. Despite numerous admonitions from FDA over the years, we continue to see juice blends being inaccurately labeled as single-juice products.

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers

further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

35.     Notwithstanding the Open Letter, Defendants continued to utilize unlawful food labeling claims despite the express guidance of the FDA in the Open Letter.

36.     In addition to its guidance to industry, the FDA has sent warning letters to industry, including many of Defendants' peer food manufacturers for the same types of unlawful nutrient content claims described above.

37.     In these letters the FDA indicated that, as a result of the same type of claims utilized by Defendants, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR § 101)" and "misbranded within the meaning of section 403(r)(1)(A) because the product label bears a nutrient content claim but does not meet the requirements to make the claim."

38.     The warning letters were hardly isolated as the FDA has issued other warning letters to other companies for the same type of food labeling claims at issue in this case.

39.     The FDA stated that the agency not only expected companies that received warning letters to correct their labeling practices but also anticipated that other firms would examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary. Defendants did not change the labels on its Misbranded Food Products in response to these warning letters.

40.     Defendant also continued to ignore the 2009 FOP Guidance which detailed the FDA's guidance on how to make food labeling claims. Defendants ignored this guidance as well and continued to utilize unlawful claims on the labels of their Misbranded Food Products. As such, the Defendants' Misbranded Food Products continue to run afoul of 2009 FOP Guidance as well as federal and California law.

41.    Despite the FDA's numerous warnings to industry, Defendants have continued to sell products bearing unlawful food labeling claims without meeting the requirements to make them.

42.    Plaintiff did not know, and had no reason to know, that the Defendants' Misbranded Food Products were misbranded and bore food labeling claims despite failing to meet the requirements to make those food labeling claims.

**C.    Defendants' Food Products Are Misbranded**

43.    Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a nutrient in a food is a "nutrient content claim" that must be made in accordance with the regulations that authorize the use of such claims. 21 U.S.C. § 343(r)(1)(A). California expressly adopted the requirements of 21 U.S.C. § 343(r) in § 110670 of the Sherman Law.

44.    Nutrient content claims are claims about specific nutrients contained in a product. They are typically made on the front of packaging in a font large enough to be read by the average consumer. Because these claims are relied upon by consumers when making purchasing decisions, the regulations govern what claims can be made in order to prevent misleading claims.

45.    Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied nutrient content claims on labels of food products that are intended for sale for human consumption. *See* 21 C.F.R. § 101.13.

46.    21 C.F.R. § 101.13 provides the general requirements for nutrient content claims, which California has expressly adopted. *See* California Health & Safety Code § 110100. 21 C.F.R. § 101.13 requires that manufacturers include certain disclosures when a nutrient claim is made and, at the same time, the product contains unhealthy components, such as fat, saturated fat, cholesterol and sodium at levels that the FDA has concluded increases the risk of diet-related disease or health related condition. It also sets forth the manner in which that disclosure must be made, as follows:

(4)(i) The disclosure statement "See nutrition information for ___ content" shall be in easily legible boldface print or type, in distinct contrast to other printed or graphic matter, and in a size no less than that required by §101.105(i) for the net quantity of contents statement, except where the size of the claim is less than two times the required size of the net quantity of contents statement, in which case the

disclosure statement shall be no less than one-half the size of the claim but no smaller than one-sixteenth of an inch, unless the package complies with §101.2(c)(2), in which case the disclosure statement may be in type of not less than one thirty-second of an inch.

(ii) The disclosure statement shall be immediately adjacent to the nutrient content claim and may have no intervening material other than, if applicable, other information in the statement of identity or any other information that is required to be presented with the claim under this section (e.g., see paragraph (j)(2) of this section) or under a regulation in subpart D of this part (e.g., see §§101.54 and 101.62). If the nutrient content claim appears on more than one panel of the label, the disclosure statement shall be adjacent to the claim on each panel except for the panel that bears the nutrition information where it may be omitted.

47.     An "expressed nutrient content claim" is defined as any direct statement about the level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories"). *See* 21 C.F.R. § 101.13(b)(1).

48.     An "implied nutrient content claim" is defined as any claim that: (i) describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (*e.g.*, "high in oat bran"); or (ii) suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat").  21 C.F.R. § 101.13(b)(2)(i-ii).

**D.     Defendants Make Unlawful "0g Trans Fat" Nutrient Content Claims**

49.     To appeal to consumer preferences, Defendants have repeatedly made unlawful nutrient content claims on products containing disqualifying levels of fat, saturated fat, cholesterol or sodium.  These nutrient content claims were unlawful because they have failed to include disclosure statements required by law that are designed to inform consumers of the inherently unhealthy nature of those products in violation of 21 C.F.R. § 101.13(h), which has been incorporated in California's Sherman Law.

50.     21 C.F.R. § 101.13 (h)(l) provides that:

If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less … per 50 g … then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for __ content" with the blank filled in with

1      the identity of the nutrient exceeding the specified level, e.g., "See nutrition
2      information for fat content."

3          51.    Defendants repeatedly violate this provision. Defendants' Misbranded Food
4   Products' packaging prominently makes "0 grams Trans Fat" claims despite disqualifying levels
5   of saturated fat that far exceed the 4 gram disclosure threshold.

6          52.    Pursuant to 21 C.F.R. § 101.13(h), Defendants are prohibited from making the
7   unqualified nutrient claims of "0 grams Trans Fat" on their food products if their products contain
8   fat in excess of 13 grams, saturated fat in excess of 4 grams, cholesterol in excess of 60
9   milligrams, or sodium in excess of 480mg per 50 grams, unless the product also displays a
10  disclosure statement that informs consumers of the product's fat, saturated fat and sodium levels.

11         53.    These regulations are intended to ensure that consumers are not misled to believe
12  that a product that claims, for instance, to be low in trans fat, but actually has other unhealthy fat
13  levels, is a healthy choice, because of the lack of trans fats.

14         54.    Nevertheless, Defendants' product labels state that the product contains "0 grams
15  Trans Fat" without such a disclosure even though their Misbranded Food Products contain
16  saturated fat in excess of the 4 gram level that the FDA has concluded increases the risk of a diet-
17  related disease or health-related condition.

18         55.    Based on the fat, saturated fat, cholesterol and sodium content of Defendants'
19  products, pursuant to federal and California law, Defendants must include a warning statement
20  adjacent to the trans fat nutrient claim that informs consumers of the high levels of fat, saturated
21  fat, cholesterol or sodium.    No such disclosure statement currently exists on Defendants'
22  Misbranded Food Products.  Therefore, they are misbranded as a matter of federal and California
23  law and cannot be sold because they are legally worthless.

24         56.    In addition to its guidance to industry, the FDA has sent warning letters to the
25  industry, including Defendants' subsidiaries and many of Defendants' peer food manufacturers,
26  for the same types of unlawful 0 grams trans fat nutrient content claims described above. In these
27  letters the FDA indicated that as a result of the same type of 0 gram trans fat claims utilized by
28  Defendants, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the

applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101)" and "misbranded within the meaning of section 403 because the product label bears a nutrient content claim but does not meet the requirements to make the claim."

57. The warning letters were hardly isolated, as the FDA has issued at least nine other warning letters to other companies for the same type of unlawful 0 grams trans fat nutrient content claims at issue in this case.

58. Despite the FDA's numerous warnings to industry, Defendants have continued to sell products bearing unlawful "0 grams Trans Fat" nutrient content claims without meeting the requirements to make them.

59. Plaintiff did not know, and had no reason to know, that Defendants' Misbranded Food Products were misbranded, and bore nutrient claims despite failing to meet the requirements to make those nutrient claims. Plaintiff was equally unaware that Defendants' Misbranded Food Products contained one or more nutrients like total fat at levels in the food that, according to the FDA, "may increase the risk of disease or health related condition that is diet related." Plaintiff and members of the Class who purchased the Misbranded Food Products paid an unwarranted premium for these products.

### D. Defendants Have Violated California Law

60. Defendants have violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

61. Defendants have violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

62. Defendants have violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

63.     Defendants have violated California Health & Safety Code § 110660 because their labeling is false and misleading in one or more ways, as follows:

a.     Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110665 because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto;

b.     Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto; and

c.     Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

64.     Defendants have violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

65.     Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because they purport to be or are represented for special dietary·uses, and their labels fail to bear such information concerning their vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

66.     Defendants have violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

67.     Defendants have violated California Health & Safety Code § 110770 which makes it unlawful· for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

68.     Defendants have violated the standard set by 21 C.F.R. § 101.13(h),· which has been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

**E.     Plaintiff Purchased Defendants' Misbranded Food Products**

69.     Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

70.     Plaintiff purchased Defendants' Misbranded Food Products on occasions during the Class Period.  Plaintiff purchased:

The Original Coffee-mate




The Original Coffee-mate Packets



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



## Nutrition Facts/Datos de Nutrición

Serving Size/Tamaño por Ración: 1 packet/paquete (3 g)
Servings per Container/Raciones por Envase 7

**Amount per Serving/Cantidad por Ración**

**Calories/Calorías** 15   Calories from Fat/Calorías de Grasa 10

| | % Daily Value*/% Valor Diario* |
|---|---|
| **Total Fat/Grasa Total** 1g | **2%** |
| Saturated Fat/Grasa Saturada 1g | **5%** |
| Trans Fat/Grasa Trans 0g | |
| Polyunsaturated Fat/Grasa Poliinsaturada 0g | |
| Monounsaturated Fat/Grasa Monoinsaturada 0g | |
| **Cholesterol/Colesterol** 0mg | **0%** |
| **Sodium/Sodio** 0mg | **0%** |
| **Total Carbohydrate/Carbohidrate Total** 1g | **0%** |
| Sugars/Azúcares 0g | |
| **Protein/Proteínas** 0g | |

Not a significant source of dietary fiber, vitamin A, vitamin C, calcium, and iron.
No es una fuente significativa de fibra dietética, vitamina A, vitamina C, calcio y hierro.
*Percent Daily Values are based on a 2,000 calorie diet.
*Los Porcentajes de Valores Diarios están basados en una dieta de 2,000 calorías.

**INGREDIENTS:** CORN SYRUP SOLIDS, VEGETABLE OIL (PARTIALLY HYDROGENATED COCONUT OR PALM KERNEL, HYDROGENATED SOYBEAN), SODIUM CASEINATE (A MILK DERIVATIVE)**, AND LESS THAN 2% OF DIPOTASSIUM PHOSPHATE (MODERATES COFFEE ACIDITY), MONO- AND DIGLYCERIDES (PREVENTS OIL SEPARATION), SODIUM ALUMINOSILICATE, ARTIFICIAL FLAVOR, ANNATTO COLOR.

**INGREDIENTES:** SÓLIDOS DE JARABE DE MAÍZ, ACEITE VEGETAL (DE COCO O DE PALMISTE PARCIALMENTE HIDROGENADO, DE SOYA HIDROGENADO), CASEINATO DE SODIO (UN DERIVADO DE LA LECHE)** Y MENOS DEL 2% DE FOSFATO DIPOTÁSICO (MODERA LA ACIDEZ DEL CAFÉ), MONO Y DIGLICERIDOS (EVITA LA SEPARACIÓN DEL ACEITE), ALUMINOSILICATO DE SODIO, SABOR ARTIFICIAL, COLOR ACHIOTE.
**Not a source of lactose./No es una fuente de lactosa.

**DISTRIBUTED BY / DISTRIBUIDO POR:** NESTLE USA, INC., GLENDALE, CA  91203 USA
**THIS PRODUCT IS NON-DAIRY, LACTOSE-FREE AND CHOLESTEROL-FREE.**      43147581



QUESTIONS?
¿PREGUNTAS?
Call/Llame al
1-800-637-8534
M-F/L-V. 8AM
to/a 8PM ET/
Hora del Este.
Visit us at/Visítenos en
Coffee-mate.com

NUTRITIONAL COMPASS™

NESTLÉ® AND
COFFEE-MATE®
ARE REGISTERED
TRADEMARKS OF
SOCIÉTÉ DES PRODUITS
NESTLÉ S.A. VEVEY,
SWITZERLAND.

Ⓤᴰ

*Class Action Complaint*

71.     Plaintiff read the labels on Defendants' Misbranded Food Products, including the "0 grams Trans Fat" nutrient content label, before purchasing them.  Defendants' failure to disclose the presence of risk-increasing nutrients in connection with its "0 grams Trans Fat" nutrient content claim was deceptive because it falsely conveyed to the Plaintiff the net impression that the Misbranded Food Products he bought made only positive contributions to a diet, and did not contain any nutrients at levels that raised the risk of diet-related disease or health- related condition.

72.     Plaintiff relied on Defendants' package labeling including the "0 grams Trans Fat" nutrient content claim, and based and justified the decision to purchase Defendants' products in substantial part on Defendants' package labeling including the "0 grams Trans Fat" nutrient content claim.

73.     At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' products were misbranded as set forth herein, and would not have bought the products had he known the truth about them.

74.     At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' "0 grams Trans Fat" nutrient content claim was unlawful and unauthorized as set forth herein, and would not have bought the products absent the unlawful "0 grams Trans Fat" nutrient content claim.

75.     As a result of Defendants unlawful "0 grams Trans Fat" nutrient content claims, Plaintiff and thousands of others in California purchased the Misbranded Food Products at issue.

76.     Defendants' labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.  Defendants' misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendants' misrepresentations in determining whether to purchase the products at issue.

77.     A reasonable person would also attach importance to whether Defendants' products were legally salable, and capable of legal possession, and to Defendants' representations about these issues in determining whether to purchase the products at issue. Plaintiff would not

have purchased Defendants' Misbranded Food Products had he known they were not capable of being legally sold or held.

## CLASS ACTION ALLEGATIONS

78.     Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the United States who, within the last four years, purchased Nestlé "Coffee-Mate" powder coffee creamer labeled "0g Trans Fat" but which also states on the label that the product contains more than 4 grams of saturated fat or 13 grams of fat per 50 grams (the "Class").

79.     The following persons are expressly excluded from the Class:  (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

80.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

81.     Numerosity:  Based upon Defendants' publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

82.     Common Questions Predominate:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, just for example:

a.      Whether Defendants engaged in unlawful, unfair or deceptive business practices by failing to properly package and label their Misbranded Food Products sold to consumers;

b.      Whether the food products at issue were misbranded as a matter of law;

c.      Whether Defendants made unlawful and misleading nutrient content claims with respect to their food products sold to consumers;

d.      Whether Defendants violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500 *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, and the Sherman Law;

e.  Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f.  Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

g.  Whether Defendants were unjustly enriched by their deceptive practices.

83.  Typicality:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendants' Misbranded Food Products during the Class Period.  Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct in violation of California law.  The injuries of each member of the Class were caused directly by Defendants' wrongful conduct.  In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

84.  Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class.  Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the members of the Class.  Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

85.  Superiority:  There is no plain, speedy or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

86.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

87.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

88.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Business and Professions Code § 17200, _et seq._**
**Unlawful Business Acts and Practices**

89.    Plaintiff incorporates by reference each allegation set forth above.

90.    Defendants' conduct constitutes unlawful business acts and practices.

91.    Defendants sold Misbranded Food Products in California and the United States during the Class Period.

92.     Defendants are corporations and, therefore, each is a "person" within the meaning of the Sherman Law.

93.     Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

94.     Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

95.     Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

96.     Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally, and which were legally worthless.

97.     As a result of Defendants' illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

98.     Defendants' unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.  Plaintiff and the Class paid a premium price for the Misbranded Food Products.

99.     As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

## SECOND CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Unfair Business Acts and Practices

100.    Plaintiff incorporates by reference each allegation set forth above.

1   101. Defendants' conduct as set forth herein constitutes unfair business acts and
2   practices.

3   102. Defendants sold Misbranded Food Products in California and the United States
4   during the Class Period.

5   103. Plaintiff and members of the Class suffered a substantial injury by virtue of buying
6   Defendants' Misbranded Food Products that they would not have purchased absent Defendants'
7   illegal conduct.

8   104. Defendants' deceptive marketing, advertising, packaging and labeling of their
9   Misbranded Food Products and their sale of unsalable misbranded products that were illegal to
10  possess was of no benefit to consumers, and the harm to consumers and competition is
11  substantial.

12  105. Defendants sold Plaintiff and the Class Misbranded Food Products that were not
13  capable of being legally sold or held and that were legally worthless.

14  106. Plaintiff and the Class who purchased Defendants' Misbranded Food Products had
15  no way of reasonably knowing that the products were misbranded and were not properly
16  marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the
17  injury each of them suffered.

18  107. The consequences of Defendants' conduct as set forth herein outweigh any
19  justification, motive or reason therefor. Defendants' conduct is and continues to be immoral,
20  unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and
21  the Class. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

22  108. As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business
23  and Professions Code § 17203, are entitled to an order enjoining such future conduct by
24  Defendants, and such other orders and judgments which may be necessary to disgorge
25  Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food
26  Products by Plaintiff and the Class.

27
28

**THIRD CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**Fraudulent Business Acts and Practices**

109.    Plaintiff incorporates by reference each allegation set forth above.

110.    Defendants' conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

111.    Defendants sold Misbranded Food Products in California and the United States during the Class Period.

112.    Defendants' misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentation that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and members of the Class were deceived.  Defendants have engaged in fraudulent business acts and practices.

113.    Defendants' fraud and deception caused Plaintiff and the Class to purchase Defendants Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

114.    Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and that were legally worthless.  Plaintiff and the Class paid a premium price for the Misbranded Food Products.

115.    As a result of Defendants' conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**Misleading and Deceptive Advertising**

116.    Plaintiff incorporates by reference each allegation set forth above.

117. Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendants.

118. Defendants sold Misbranded Food Products in California and the United States during the Class Period.

119. Defendants engaged in a scheme of offering Defendants Misbranded Food Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendants Misbranded Food Products. Defendants' advertisements and inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products and are statements disseminated by Defendants to Plaintiff and the Class that were intended to reach members of the Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

120. In furtherance of their plan and scheme, Defendants prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendants' Misbranded Food Products. Plaintiff and the Class necessarily and reasonably relied on Defendants' materials, and were the intended targets of such representations.

121. Defendants' conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendants Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

122. As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold or held and are

1   legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food

2   Products.

3        123.   Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are

4   entitled to an order enjoining such future conduct by Defendants, and such other orders and

5   judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any

6   money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

7                              **FIFTH CAUSE OF ACTION**
                    **Business and Professions Code § 17500, *et seq.***
8                              <u>**Untrue Advertising**</u>

9

10       124.   Plaintiff incorporates by reference each allegation set forth above.

11       125.   Plaintiff asserts this cause of action against Defendants for violations of California

12  Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

13       126.   Defendants sold Misbranded Food Products in California and the United States

14  during the Class Period.

15       127.   Defendants engaged in a scheme of offering Defendants' Misbranded Food

16  Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other

17  promotional materials. These materials misrepresented and/or omitted the true contents and

18  nature of Defendants' Misbranded Food Products. Defendants' advertisements and inducements

19  were made in California and come within the definition of advertising as contained in Business

20  and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional

21  materials were intended as inducements to purchase Defendants' Misbranded Food Products, and

22  are statements disseminated by Defendants to Plaintiff and the Class. Defendants knew, or in the

23  exercise of reasonable care should have known, that these statements were untrue.

24       128.   In furtherance of their plan and scheme, Defendants prepared and distributed in

25  California and nationwide via product packaging and labeling, and other promotional materials,

26  statements that falsely advertise the composition of Defendants' Misbranded Food Products, and

27  falsely misrepresented the nature of those products. Plaintiff and the Class were the intended

28  targets of such representations and would reasonably be deceived by Defendants' materials.

129.   Defendants' conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of Defendants' Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

130.   As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.   Misbranded products cannot be legally sold or held and are legally worthless.  Plaintiff and the Class paid a premium price for the Misbranded Food Products.

131.   Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

**SIXTH CAUSE OF ACTION**
**Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.***

132.   Plaintiff incorporates by reference each allegation set forth above.

133.   This cause of action is brought pursuant to the CLRA.   This cause of action does not currently seek monetary damages and is limited solely to injunctive relief.  Plaintiff intends to amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice pursuant to Cal. Civ. Code § 1782.

134.   At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendants were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

135.   Consequently, Plaintiff and the Class will be entitled to actual and punitive damages against Defendants for their violations of the CLRA.   In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

136. Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

137. Defendants sold Misbranded Food Products in California during the Class Period.

138. Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

139. Defendants' Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

140. By engaging in the conduct set forth herein, Defendants violated and continue to violate Sections 1770(a)(5) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

141. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

142. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

143. By engaging in the conduct set forth herein, Defendants have violated and continue to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

144. Plaintiff requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If

Defendants are not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

**SEVENTH CAUSE OF ACTION**
**Restitution Based on Unjust Enrichment/Quasi-Contract**

145.    Plaintiff incorporates by reference each allegation set forth above.

146.    As a result of Defendants' fraudulent and misleading labeling, advertising, marketing and sales of Defendants' Misbranded Food Products Defendants were enriched at the expense of Plaintiff and the Class.

147.    Defendants sold Misbranded Food Products to Plaintiff and the Class that were not capable of being sold or held legally and which were legally worthless. It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiff and the Class, in light of the fact that the products were not what Defendants purported them to be. Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiff and the Class of all monies paid to Defendants for the products at issue.

148.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**Beverly-Song Act (Cal. Civ. Code § 1790, et seq.)**

149.    Plaintiff incorporates by reference each allegation set forth above.

150.    Plaintiff and members of the Class are "buyers" as defined by Cal. Civ. Code § 1791(b).

151.    Defendants are "manufacturers" and "sellers" as defined by Cal. Civ. Code § 1791(j) & (l).

152.    Defendants' food products are "consumables" as defined by Cal. Civ. Code § 1791(d).

153.    Defendants' nutrient and health content claims constitute "express warranties" as defined by Cal. Civ. Code § 1791.2.

154.  Defendants, through their package labels, create express warranties by making the affirmation of fact and promising that their Misbranded Food Products comply with food labeling regulations under federal and California law.

155.  Despite Defendants' express warranties regarding their food products, they do not comply with food labeling regulations under federal and California law.

156.  Defendants breached their express warranties regarding their Misbranded Food Products in violation of Cal. Civ. Code § 1790, *et seq.*

157.  Defendants sold Plaintiff and members of the Class Defendants' Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless.

158.  As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial pursuant to Cal. Civ. Code § 1794.

159.  Defendants' breaches of warranty were willful, warranting the recovery of civil penalties pursuant to Cal. Civ. Code § 1794.

### NINTH CAUSE OF ACTION
### Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*)

160.  Plaintiff incorporates by reference each allegation set forth above.

161.  Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

162.  Defendants are "suppliers" and "warrantors" as defined by 15 U.S.C. § 2301(4) & (5).

163.  Defendants' food products are "consumer products" as defined by 15 U.S.C. § 2301(1).

164.  Defendants' nutrient and health content claims constitute "express warranties."

165.  Defendants, through their package labels, create express warranties by making the affirmation of fact and promising that their Misbranded Food Products comply with food labeling regulations under federal and California law.

166.  Despite Defendants' express warranties regarding their food products, they do not comply with food labeling regulations under federal and California law.

167.    Defendants breached their express warranties regarding their Misbranded Food Products in violation of 15 U.S.C. §§ 2301, *et seq.*

168.    Defendants sold Plaintiff and members of the Class Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless.

169.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of his claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendants as follows:

A.    For an order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

B.    For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the Class for all causes of action other than the CLRA, as Plaintiff does not seek monetary relief under the CLRA, but intends to amend his Complaint to seek such relief;

C.    For an order requiring Defendants to immediately cease and desist from selling their Misbranded Food Products listed in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

D.    For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.    For an order awarding attorneys' fees and costs;

F.    For an order awarding punitive damages;

G.    For an order awarding pre-and post-judgment interest; and

///

///

///

1    H.    For an order providing such further relief as this Court deems proper.

2

3    Dated: May 4, 2012          Respectfully submitted,

4

5                                    *Ben F. Pierce Gore*
                                    Ben F. Pierce Gore (SBN 128515)

6                                    PRATT & ASSOCIATES
                                    1901 S. Bascom Avenue, Suite 350
7                                    Campbell, CA  95008
                                    Telephone:  (408) 429-6506
8                                    Fax:  (408) 369-0752
                                    pgore@prattattorneys.com

9
                                    Jay Nelkin
10                                   Carol Nelkin
                                    Stuart M. Nelkin
11                                   NELKIN & NELKIN, P.C.
                                    5417 Chaucer Drive
12                                   Houston, Texas 77005
                                    Telephone:  (713) 526-4500
13                                   Facsimile:  (281) 825-4161
                                    jnelkin@nelkinpc.com
14                                   cnelkin@nelkinpc.com
                                    snelkin@nelkinpc.com
15
                                    Don Barrett
16                                   David McMullan, Jr.
                                    Brian Herrington
17                                   Katherine B. Riley
                                    BARRETT LAW GROUP, P.A.
18                                   P.O. Box 927
                                    404 Court Square North
19                                   Lexington, MS 39095
                                    Telephone: (662) 834-2488
20                                   Toll Free: (877) 816-4443
                                    Fax: (662) 834-2628
21                                   dbarrett@barrettlawgroup.com
                                    donbarrettpa@yahoo.com
22                                   bherrington@barrettlawgroup.com
                                    kbriley@barrettlawgroup.com
23                                   kbriphone@yahoo.com
                                    dmcmullan@barrettlawgroup.com
24
                                    Charles Barrett
25                                   CHARLES BARRETT, P.C.
                                    6518 Hwy. 100, Suite 210
26                                   Nashville, TN 37205
                                    Telephone: (615) 515-3393
27                                   Fax: (615) 515-3395
                                    charles@cfbfirm.com
28

- 34 -
*Class Action Complaint*

Richard Barrett
LAW OFFICES OF RICHARD R. BARRETT, PLLC
2086 Old Taylor Road, Suite 1011
Oxford, MS 38655
Telephone: (662) 380-5018
Fax: (866) 430-5459
rrb@rrblawfirm.net

J. Price Coleman
COLEMAN LAW FIRM
1100 Tyler Avenue, Suite 102
Oxford, MS 38655
Telephone: (662) 236-0047
Fax: (662) 513-0072
colemanlawfirmpa@bellsouth.net

Dewitt M. Lovelace
Alex Peet
LOVELACE LAW FIRM, P.A.
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: (850) 837-6020
Fax: (850) 837-4093
dml@lovelacelaw.com

David Shelton
ATTORNEY AT LAW
1223 Jackson Avenue East, Suite 202
Oxford, MS 38655
Telephone: (662) 281-1212
Fax: (662) 281-1312
david@davidsheltonpllc.com

Keith M. Fleischman
Frank Karam
Ananda N. Chaudhuri
FLEISCHMAN LAW FIRM
565 Fifth Avenue, 7th Floor
New York, New York 10017
Telephone: 212-880-9571
keith@fleischmanlawfirm.com
frank@fkaramlaw.com
achaudhuri@fleischmanlawfirm.com

Zona Jones
PROVOST UMPHREY LAW FIRM LLP
490 Park Street
P.O. Box 4905
Beaumont, TX 77704
Telephone: (409) 299-5178
zjones@provostumphrey.com

*Attorneys for Plaintiff*

- 35 -
*Class Action Complaint*