1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JUDE TRAZO, JENNA COFFEY, MARIANNA BELLI, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>NESTLÉ USA, INC.,<br><br>                    Defendants. | Case No.: 5:12-CV-2272 PSG<br><br>**ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE**<br><br> **(Re: Docket Nos. 37, 40)** |

Both parties appear to agree this case is a David-versus-Goliath battle.  Where they disagree is which party is the Goliath, and which is the David.  Plaintiffs Jude Trazo, Jenna Coffey, and Marianna Belli (collectively, "Plaintiffs") sue Defendant Nestlé USA, Inc. ("Nestlé"), alleging that Nestlé launched a "global marketing strategy" to mislead "millions of Americans" about the healthy and nutritious nature of its packaged food products.[1]  In turn, Nestlé portrays Plaintiffs as part of a massive false advertising consumer class action coalition against the food and beverage

---

[1] *See* Docket No. 30 at 2-4.

industry.[2]  Nestlé moves to dismiss the complaint and strike the class action allegations; Plaintiffs oppose.  Having carefully considered the papers and arguments presented by counsel, the court GRANTS-IN-PART Nestlé's motion to dismiss and Nestlé's motion to strike.

## I.      BACKGROUND

Except where otherwise noted, the court draws the following facts, taken as true for the purposes of a motion to dismiss, from Plaintiffs' complaint.[3]

Nestlé is a multinational company that manufactures and sells a variety of packaged food products.  According to Nestlé's website, Nestlé has pursued a "Nutrition, Health, and Wellness strategy" to renovate its products according to "nutrition and health considerations."  Knowing that modern consumers value these considerations, Nestlé has made claims on both its website and its product packaging about the healthful nature of its products.

Plaintiffs are California residents who have purchased Nestlé's allegedly misbranded products, in reasonable reliance on claims made by Nestlé that they say are false and misleading. The products are:

- Nestlé Dark Chocolate Eskimo Pie
- Nestlé Juicy Juice
- Buitoni Shrimp and Lobster Ravioli
- Dreyer's All Natural Fruit Bars
- Nestlé Toll House Peanut Butter and Milk Chocolate Morsels
- Nestlé Toll House Dark Chocolate Morsels
- Nestlé Milk Chocolate Raisinets
- Lean Pockets Breakfast Sandwiches
- Hot Pockets Breakfast Sandwiches
- Nestlé Coffee Mate
- Nestlé Rich Milk Chocolate Cocoa
- Nestlé Nesquik Chocolate Syrup
- Buitoni Alfredo Sauce.[4]

---

[2] *See* Docket No. 40 at 1, Ex. A (listing 26 food misbranding suits filed by the same group of attorneys in the Northern District of California).

[3] Plaintiffs filed an amended complaint on October 25, 2012.  *See* Docket No. 30.

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

In addition to pursuing their own claims, Plaintiffs also seek to represent all persons in the United States, who within the designated class period purchased any Nestlé product with the following attributes:

(1) Labeled or advertised "No Sugar Added" but which contain concentrated fruit juice or other added sugars, and/or provide more than 40 calories per reference amount but do not disclose that the product is not "low calorie" or "calorie reduced" and direct the consumer's attention to the nutrition panel for further information;
(2) Labeled or advertised with the ingredient "Evaporated Cane Juice;"
(3) Labeled or advertised as "All Natural" or "Natural," but contain artificial ingredients, flavoring, added coloring, and/or chemical preservatives;
(4) Labeled or advertised with an antioxidant claim for a nutrient lacking a Daily Value or lacking the minimum Daily Value specified for the claim made;
(5) Labeled or advertised with a nutrient content claim but which contains fat, saturated fat, sodium, or cholesterol in excess of disqualifying amounts in 21 C.F.R. § 101.13(h);
(6) Labeled or advertised with "No Sugar Added" on food intended for use by infants less than two years of age;
(7) Labeled or advertised with an unauthorized health claim;
(8) Labeled or advertised with an unlawful serving size;
(9) Packaged with nonfunctional slack-fill.[5]

Plaintiffs assert the following claims against Nestlé: violations of California Unfair Competition Law ("UCL");[6] violations of Fair Advertising Law ("FAL");[7] violations of Consumer Legal Remedies Act ("CLRA");[8] restitution based on unjust enrichment/quasi-contract; violations of the Beverly-Song Act; and violations of the Magnuson-Moss Act.

---

[4] *See* Docket No. 30 ¶ 182.

[5] *See* Docket No. 30.

[6] *See* Cal. Bus. & Prof. Code §§ 17200 *et. seq.* The UCL "borrows" violations of other laws as unlawful practices and then provides an independent action. *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).

[7] Cal. Bus. & Prof. Code §§ 17500 *et. seq.*

[8] Cal. Civ. Code §§ 1750 *et. seq.*

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[9]  If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[10]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[12]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[13]  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[14]  However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[15]

---

[9] Fed. R. Civ. P. 8(a)(2).

[10] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[12] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[13] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[14] *See id.* at 1061.

[15] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear… that the complaint could not be saved by amendment."[16]

Claims sounding in fraud or mistake must additionally comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b) by pleading with particularity the circumstances surrounding the fraud or mistake. Rule 9(b) applies to the state claims at issue here as they involve allegations that consumers were misled.[17] The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge."[18] This includes "the who, what, when, where, and how of the misconduct charged."[19]

## B.   Motion to Strike Class Allegations

Upon a motion or on its own, the court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."[20] Fed. R. Civ. P. 23, which governs class actions, requires that "the court must—at an early practicable time—determine by order whether to certify the action as a class action." A motion to strike class allegations is thus ripe when as a matter of law, "the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim."[21] "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike."[22]

---

[16] *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[17] *See generally Jones v. ConAgra Foods, Inc.,* 912 F. Supp. 2d 889 (N.D. Cal. 2012).

[18] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[19] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

[20] Fed. R. Civ. P. 12(f).

[21] *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) (quoting *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160 (1982)). *See also Kamm v. California City Dev. Co.,* 509 F.2d 205, 212 (9th Cir.1975); *Astiana v. Ben & Jerry's Homemade, Inc.,* Case No. 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ("Given that the issues involved are pure questions of law, and the record before the Court is undisputed, the Court sees no reason

United States District Court
For the Northern District of California

## III.   DISCUSSION

### A.   Motion to Dismiss

#### 1.   Standing

As a preliminary matter, Nestlé argues that Plaintiffs do not have standing to sue over advertisements or products that they do not allege that they have ever seen or purchased.  It is true that Plaintiffs must demonstrate they have both Article III standing, as well as "economic injury" under the UCL, FAL, and CLRA.[23]  What Nestlé fails to appreciate, however, is that Plaintiffs have done so at least with respect to the 13 products named in their individual claims.  Plaintiffs have alleged that they purchased each of the 13 food products named, read the labels and were misled, and spent money purchasing those products that they otherwise would have saved had they not been deceived.[24]  This is sufficient to establish individual standing as to these products.[25]

Nestlé may be right that claims involving other products, never seen or purchased by Plaintiffs, have no business in this case.  But standing is merely a threshold inquiry that requires

---

why it cannot" rule on the motion to strike class allegations) (citations omitted); *Hill v. Wells Fargo Bank, N.A.*, Case No. 12 C 7240, 2013 WL 2297056, at *10 (N.D. Ill. May 24, 2013) (striking class allegations when it was clear at the pleadings stage that class certification would be inappropriate).

[22] *Roberts v. Wyndham Int'l, Inc.,* Case No.12-CV-5180-PSG, 2012 WL 6001459 (N.D. Cal. Nov. 30, 2012).

[23] *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, Case No. 10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) *aff'd*, 475 F. App'x 113 (9th Cir. 2012); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1125 (N.D. Cal. 2010).

[24] *See* Docket No. 30 ¶¶ 182, 193.

[25] *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) ("[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging ... that he or she would not have bought the product but for the misrepresentation"); *Kosta v. Del Monte Corp.*, 12-CV-01722-YGR, 2013 WL 2147413, at *11-12 (N.D. Cal. May 15, 2013*); Ivie v. Kraft Foods Global, Inc.*, Case No. 12-02554-RMW, 2013 WL 3296616, at *4 (N.D. Cal. June 28, 2013); *Lanovaz v. Twinings N. Am., Inc.*, Case No. 12-02646-RMW, 2013 WL 675929, at *6 (N.D. Cal. Feb. 25, 2013); *Jones*, 912 F. Supp. 2d at 901; *Chacanaca,* 752 F.Supp.2d at 1125; *Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. App'x 359, 360-61 (9th Cir. 2009); *Khasin v. Hershey Co.,* Case No. 12-CV-01862 EJD, 2012 WL 5471153, at *6 (N.D. Cal. Nov. 9, 2012).

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

1    the class action plaintiff to demonstrate she suffered economic injury by virtue of the purchases she

2    herself made, not for the other transactions that she seeks to represent.[26]   The court therefore

3    confines the standing inquiry to the named plaintiffs' individual claims alone, and defers questions

4    of sufficient similarity to the class certification stage. [27]

5         **2.   FDCA Preemption**

6         Before considering preemption, a brief summary of the applicable statutory framework is

7    warranted.  Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), and in so doing

8    established the Federal Food and Drug Administration ("FDA") to "promote the public health" by

9    ensuring that "foods are safe, wholesome, sanitary, and properly labeled."[28]   The FDA has

10   implemented regulations to achieve this objective.[29]   In 1990, Congress passed an amendment to

11   the FDCA, the Nutrition Labeling and Education Act ("NLEA"), which imposed a number of

12   requirements specifically governing food nutritional content labeling.[30]

---

15   [26] 1 Newberg on Class Actions § 2:6 (5th ed.) ("when a class plaintiff shows individual standing,
     the court should proceed to Rule 23 criteria to determine whether, and to what extent, the plaintiff
16   may serve in a representative capacity on behalf of the class").  *See also See Lewis v. Casey,* 518
     U.S. 343, 357 (1996) (holding that named plaintiffs must show personal injury, which is different
17   from "injury [] suffered by other, unidentified members of the class to which they belong and
     which they purport to represent").  *Donohue v. Apple, Inc.,* 871 F. Supp. 2d 913, 921-22 (N.D. Cal.
18   2012) (holding that in a UCL case, plaintiff had individual standing because he purchased two
     iPhone models; questions of whether he could represent purchases of other iPhone models related
19   not to standing but to treatment as a class action).

20   [27] To be fair, there is a split on this issue even within this very district.  The undersigned has
     recently employed this approach.  *See Ogden v. Bumble Bee Foods, LLC,* 85 F.R.D. 3d 775 (N.D.
21   Cal. 2013) ("named plaintiffs must show only individual standing for their own claims and courts
     should then determine whether they may represent similar but not identical injuries by putative
22   class members").  *See also, e.g., Clancy v. The Bromley Tea Company,* Case No. 12-CV-03003
     JST (N.D. Cal. August 9, 2013) ("Transmogrifying typicality or commonality into an issue of
23   standing would undermine the well-established" class action standing principles).  By contrast,
     others have considered whether class action plaintiffs have standing to pursue claims for products
24   not purchased.  *See Ivie,* 2013 WL 3296616, at *9; *Brown v. Hain Celestial Grp., Inc.*, 913 F.
     Supp. 2d 881, 890 (N.D. Cal. 2012); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869
25   (N.D. Cal. 2012).

26   [28] *See* 21 U.S.C. § 393.

27   [29] *See, e.g.*, 21 C.F.R. § 101.1 *et. seq.*

28   [30] *See, e.g.,* 21 U.S.C. § 343 *et. seq.*

7

Plaintiffs are not suing under the FDCA, but under California state law.  The Sherman Food, Drug, and Cosmetic Act ("Sherman Law")[31] has adopted wholesale the food labeling requirements of the FDCA and NLEA as "the food regulations of this state."[32]  The Sherman Law declares any food to be "misbranded" if it is "false or misleading in any particular," if the labeling "does not conform with the requirements for nutrition labeling" set forth in certain provisions of the NLEA.[33]  In California, "[a]ny unlawful business practice, including violations of the Sherman law, may be redressed by a private action charging unfair competition."[34]

Turning to preemption, federal preemption occurs state law that is contrary to valid federal law, summarized in three distinct categories: (1) express preemption, (2) conflict preemption, and (3) implied field preemption.[35]  The touchstone for determining whether preemption applies is Congress' "clear and manifest" intent.[36]

Nestlé invokes both express and implied preemption in opposing Plaintiffs' claims. Express preemption applies where Congress has specifically stated in the statutory language that its enactments preempt state law.[37]  Implied or field preemption arises when federal law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively."[38]  Such intent may be inferred from the scope of the federal regulation – where the statutory scheme is "so

---

[31] *See* Cal. Health & Safety Code §§ 109875 *et. seq.*

[32] Cal. Health & Safety Code § 110100.

[33] Cal. Health & Safety Code § 110660, 110665, 110670.

[34] *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 210-11, 673 P.2d 660 (1983) (superseded on other grounds).  *See also* Cal. Bus & Prof. Code § 17200 ("unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising").

[35] *See English v. General Electric Co.,* 496 U.S. 72, 78-79 (1990).

[36] *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

[37] *English,* 496 U.S. at 79.

[38] *Id.*

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or it covers "a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."[39]

The FDCA contains an express preemption provision, 21 U.S.C. § 343-1(a): "[e]xcept as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish… any requirement for a food" which is not identical to the requirements of the FDCA.[40]  In other words, states may not adopt food labeling requirements governed by the NLEA that are different from, or additional to those imposed by the federal statutory scheme.[41] The NLEA is clear, however, that preemption does not extend further than "the plain language of the statute itself."[42]  The FDCA also contains a provision that the Supreme Court has interpreted as giving rise to implied preemption, 21 U.S.C. § 337(a): "[e]xcept as provided in subsection, all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."  The effect of this provision is that there is no private right of action to enforce the FDCA.

As noted by the undersigned in *Samet v. Procter & Gamble*,[43] the rule that emerges from cases discussing the FDCA's preemptive force[44] is as follows.  To avoid express preemption under

---

[39] *Id.*

[40] 21 U.S.C. § 343-1(a).

[41] *See In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.,* 588 F.Supp.2d 527, 532 S.D. N.Y. 2008).  *See Riegel v.Medtronic, Inc.,* 552 U.S. 312, 330 (2008).

[42] *In re Farm Raised Salmon Cases,* 42 Cal. 4th 1077, 1091 (2008) (discussing § 6(c)(1) of the NLEA, which states that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the FDCA").

[43] *See* Case No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *6 (N.D. Cal. June 18, 2013).

[44] *See Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 348 (2001); *Perez v. Nidek Co., Ltd.,* 711 F.3d 1109 (9th Cir. 2013); *In re Farm Raised Salmon Cases,* 42 Cal. 4th 1077.

9

1    Section 343-1(a), the plaintiff must be suing for conduct that *violates* the FDCA.[45]   However, the

2    plaintiff must not be suing solely *because* the conduct violates the FDCA, else his claim would be

3    impliedly preempted under Section 337(a).[46]

4                    a.    **Express Preemption**

5            If Nestlé's products are compliant with the FDCA, Plaintiffs' claims on those products are

6    expressly preempted by Section 343-1(a).  As Judge Posner has noted, the rationale behind

7    prohibiting Plaintiffs from imposing requirements different from or in addition to those imposed by

8    the FDCA is straightforward – otherwise, nationwide manufacturers "might have to print 50

9    different labels" to satisfy each state's requirements.[47]

10           It is imperative to note, however, that preemption is an affirmative defense, not an element

11   of Plaintiffs' claims.[48]  If Nestlé wishes to throw up the shield of express preemption, it may do so,

12   but as with all affirmative defenses, Nestlé bears the burden of establishing that preemption

13   applies.[49]  Nestlé must do so by showing (1) an FDCA regulation governs the labeling claim, and

14   (2) Plaintiffs' claims would impose what the FDCA requires.  Nestlé's bare assertion that Plaintiffs

15   make "impermissible attempt[s] to impose requirements that are not identical to federal labeling

16   law" is insufficient to establish federal express preemption.[50]

17           Nestlé only grapples directly with one of Plaintiffs' claims with respect to express

18   preemption.  Nestlé argues that Plaintiffs' antioxidant claims against Dark Chocolate Raisinets and

---

[45] *See Perez,* 711 F.3d at 1120.

[46] *See id.*

[47] *Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) (Posner, J.)

[48] *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 369 (N.D. Cal. 2010).

[49] *See Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1087 n.2 (2011) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof") (citations omitted).

[50] Docket No. 40 at 38.

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

Dark Chocolate Toll House Morsels seek to impose requirements beyond the FDCA.  21 C.F.R. §

101.54(g) provides that nutrient content claims using the term "antioxidant" must also satisfy a

number of requirements.  Plaintiffs' complaint alleges that Nestlé violates many of these

requirements, including the requirement that if the antioxidant is qualified with any of the words

described in subsections (b), (c), or (e), including the term "good source," then the product must

meet the minimum levels of the antioxidant prescribed in those subsections.  Because its labels

refer to its products as merely a "source" of antioxidants, Nestlé is correct that Plaintiffs cannot

conflate the term "good source" regulated by subsection (c) with the term "source" as used by

Nestlé.  Subsection (c) plainly applies to the terms "good source," "contains," and "provides,"

without providing for inclusion of similar or lesser included terms.  A specific, finite list implies

that other terms are excluded.[51]  To the extent that Plaintiffs seek to regulate the term "source" in

the same manner as "good source," going beyond the boundaries of the regulation, this claim is

preempted.

## b.    Implied Preemption

Numerous courts have concluded that Congress did not intend the FDCA as a "sweeping

preemption" of all unfair competition and false and misleading advertisement claims related to

nutritional labels.[52]  Nestlé nevertheless counters by attempting to sew two provisions of the FDCA

together: the express preemption provision of Section 343-1(a), which prohibits any state law

establishing requirements "not identical" to the FDCA, and the implied preemption provision of

Section 337(a), which provides that enforcement of "violations[] of this chapter shall be by and in

---

[51] *See Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (as a principle of statutory interpretation, the doctrine of *expressio unius est exclusio alterius* "creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions").

[52] *See, e.g., In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1090; *see also, e.g., Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996) (holding that the FDCA does not deny states "the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements").

11

United States District Court
For the Northern District of California

the name of the United States."  But by prohibiting nonidentical state regulations, the express

preemption provision specifically contemplated the possibility of parallel state regulations, and

thus authorized states to adopt regulations so long as they were identical.[53]  Otherwise, why

wouldn't the FDCA bar state-crafted regulations altogether?  As for the implied preemption

provision, the plain language prohibits private enforcement of the FDCA, but does not apply this

ban to parallel state statutory schemes.  The FDCA therefore does not preclude states from

adopting their own parallel laws and adopting a different mechanism for enforcing those laws.

California chose to exercise this right by enacting the Sherman Law and allowing private plaintiffs

to enforce that law through the UCL.  While state law tort actions cannot be used to improperly

intrude on the FDA's exclusive jurisdiction,[54] Plaintiffs here sue under state law – namely, the

Sherman Law, UCL, FAL, and CLRA – and so their claims are not impliedly preempted.[55]


### 3.    FMIA and PIPA Express Preemption

Nestlé also asserts that the Federal Meat Inspection Act ("FMIA") and the Poultry Products

Inspection Act ("PPIA") expressly preempt claims relating to Nestlé's Hot Pockets and Lean

Pockets.  The FMIA and PIPA govern all meat and poultry products, and through the Food Safety

and Inspection Service ("FSIS") of the USDA, ensure that these products are properly labeled and

---

[53] *See In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1090 (also analyzing the legislative history of the FDCA and concluding that Congress intended to authorize states to establish identical statutory schemes).

[54] *See Perez*, 711 F.3d at 1112 (plaintiff could not bring suit solely on the basis that the defendants did not disclose lack of FDA approval); *Buckman Co.,* 531 U.S. at 348 (the plaintiff's fraud claim based on defendant's fraudulent misrepresentations to the FDA during the product approval process was no more than an improper attempt to privately enforce the FDA).

[55] By the same token, the court need not yield to the FDA under the doctrine of primary jurisdiction.  The FDA does not enforce the California state rights Plaintiffs seek to vindicate. Further, courts in the Northern District of California have generally declined to dismiss the complaint on primary jurisdiction absent concrete evidence that the FDA is currently involved in creating a new regulation concerning the subject of the lawsuit.  *See, e.g., Hood v. Wholesoy & Co, Modesto Wholesoy Co. LLC*, 12-CV-5550-YGR, 2013 WL 3553979, at *5 (N.D. Cal. July 12, 2013).  Nestlé provides no such argument.

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

are not false or misleading.[56]  Unlike non-meat packaged food products, meat products are pre-approved by the USDA, which first reviews the labels, considers whether they are false or misleading, and approves them.[57]  The Hot Pockets and Lean Pockets in question have the USDA-approved sticker on the label, indicating that they have gone through the process.

Similar to the FDCA, the FMIA contains an express preemption clause prohibiting any state law "marking, labeling, packaging, or ingredient requirements… in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia with respect to articles prepared at any establishment under inspection in accordance with the requirements under subchapter I of this chapter."[58]  The PPIA contains a nearly identical preemption provision, adding that states may not impose "storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce."[59]  In other words, like the FDCA both the FMIA and PIPA prohibit imposing any state laws not identical to the provisions of the Acts on any poultry or meat products.

Because the Sherman Law is not parallel to either the FMIA or PIPA, but rather the FDCA, it is preempted.  Through the FSIS, the USDA regulates the labeling of meat and poultry products, while the FDA regulates all other food labeling.[60]  Although the USDA adopts similar nutrition labeling regulations as imposed by the FDCA "to the extent possible," the fact remains that the USDA and FDA are able to adopt their own regulations to govern their respective realms.[61]

---

[56] *See Kuenzig v. Kraft Foods, Inc.*, Case No. 11-CV-838-T-24 TGW, 2011 WL 4031141, at *4 (M.D. Fla. Sept. 12, 2011) (citing 21 U.S.C. § 451, 457(c), 602, 607(d)).

[57] *See Meaunrit v. The Pinnacle Foods Grp., LLC*, Case No. 09-04555 CW, 2010 WL 1838715 (N.D. Cal. May 5, 2010).

[58] 21 U.S.C. § 678.

[59] 21 U.S.C. § 467(e).

[60] *Kuenzig*, 2011 WL 4031141, at *5.

[61] Nutrition Labeling of Meat and Poultry Products, 58 F.R. 632-01.

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Further, Plaintiffs' only argument in opposition supports the notion that the USDA's authority

controls.  Presumably in support of the notion that the USDA is not the only agency authorized to

regulate meat and poultry packaging, Plaintiffs present an FDA Compliance Policy Guidance

Manual to show that the FDA does not see itself as completely precluded from exercising its

jurisdiction.  But that does not confront the issue presented by Nestlé, which is not whether the

FDA may exercise jurisdiction, but whether the state can.  Further, the manual provided by

Plaintiffs suggests that the FDA may not exercise its jurisdiction unless the USDA gives its consent

– it provides that the FDA will inform FSIS when it encounters an apparent violation involving a

meat or poultry product, and will only prosecute the violation if the USDA does not wish to do

so.[62]  All this taken together shows that to be permissible, state laws must parallel the FMIA and

PIPA and FSIS regulations, not the FDCA and its regulations.  It is therefore improper for

Plaintiffs to impose Sherman Law requirements on meat products, especially where the Sherman

Law is not identical to FMIA and PIPA.

   Moreover, even if the Sherman Law requirements Plaintiffs seek to impose were parallel to

those of the FMIA/PIPA, allowing a jury to weigh in on preapproved USDA labels would surely

conflict with the federal regulatory scheme.[63]  It might be different if the USDA had not already

passed judgment on these products, but even Plaintiffs concede that the Hot Pockets and Lean

Pockets are stamped with the USDA's approval, indicating that they have already been reviewed

---

[62] Inspections, Compliance, Enforcement, and Criminal Investigations.  CPG Sec. 565.100 FDA
Jurisdiction Over Meat and Poultry Products.
http://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm074588
("FDA will inform USDA Food Safety and Inspection Service (FSIS) when an apparent violation
is encountered involving a meat or poultry product that has left a USDA inspected establishment.
This will prevent duplication of effort should USDA prefer to handle the problem, or already have
regulatory action underway in the matter. FDA will not normally initiate action involving such
products unless USDA does not wish to handle it.").

[63] See Buckman, 531 U.S. at 348 (allowing the plaintiff to sue for fraud on the FDA would disrupt
the federal regulatory scheme).

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

and deemed to not be false or misleading.[64]  If a jury came to the same conclusion as the USDA, it would be a waste of effort; if a jury instead came to a different conclusion about the nature of the labels, the jury verdict would improperly "trump" the USDA's authority.  Permissible state regimes must complement, not usurp, the federal agency's role.[65]  Plaintiffs' claims against Nestlé's Lean Pockets and Hot Pockets therefore are barred.[66]

### 4.   Rule 8 – Short and Plain Statement of a Claim

Nestlé next complains that the complaint should be dismissed because it is not a "short and plain statement" of a claim.  Rule 8(a)(2) requires that the pleading contain "a short and plain statement showing that the pleader is entitled to relief."  Nestlé calls the complaint a "multi-dimensional matrix – lumping together nine unrelated misbranding theories, thirteen-plus unrelated products, multiple allegations of generalized FDA pronouncements…"[67]  But unlike the cases cited by Nestlé, Plaintiffs here do give notice of the claims they have asserted, as well as the products implicated.  Whether the complaint sets forth the necessary factual allegations supporting Plaintiffs' claims and explains why they are entitled to relief is better evaluated under Rule 9(b) and Rule 12(b)(6).

### 5.   Failure to State a Claim – "Unlawful" claims

The complaint charges that Nestlé sells misbranded food products in violation of the Sherman Law, which under the UCL is prohibited as an "unlawful… business act or practice."[68] To state a claim under the "unlawful" prong of the UCL, Plaintiffs must allege plausible facts

---

[64] *See* Docket No. 44 at 2-3.

[65] *Cf. Meaunrit,* 2010 WL 1838715, at *7.  *See also Riegel*, 552 U.S. at 325.

[66] As these claims are preempted under the FMIA/PIPA, the court need not consider whether in deference to the USDA the court ought to apply the primary jurisdiction doctrine.

[67] Docket No. 40 at 12.

[68] Cal. Bus. & Prof. Code § 17200.

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

supporting a finding that Nestlé violated the Sherman Law.  Merely stating that Nestlé violated the

Sherman Law is not enough.  To determine whether Plaintiffs have cleared that bar, the court

considers each challenged misbranding claim in turn.

### a.    "No Sugar Added" – Eskimo Pie and Juicy Juice

Plaintiffs first allege that Nestlé mislabeled certain products as "no sugar added" in

violation of 21 C.F.R. § 101.60(c)(2).  This regulation provides that if a label proclaims "no sugar

added," and the product is not "low calorie" according to 21 C.F.R. § 101.60(b)(2), then the label

must include a statement that directs the consumer to the nutrition panel for further information on

sugar and calorie content.  21 C.F.R. § 101.60(b)(2) provides a detailed rubric for determining

whether a food is qualified as "low calorie."  While Plaintiffs plead that "Defendant's Eskimo Pie

and Juicy Juice do not meet the requirements for a 'low' or 'reduced calorie' food under California

and federal law,"[69] they never explain why these products do not meet the "low-calorie" guidelines

of 21 C.F.R. § 101.60(b)(2).  Because the court may not accept [t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements,"[70] Plaintiffs' allegations are

insufficient.

### b.    "Evaporated Cane Juice" – Buitoni Shrimp & Lobster Ravioli

Plaintiffs next claim that in the ingredient list for Buitoni Shrimp & Lobster Ravioli, Nestlé

improperly used the term "evaporated cane juice" to describe plain "sugar."  This allegedly violates

21 C.F.R. § 102.5(d), which provides that companies must use "the common or usual name for an

ingredient," which is the "name established by common usage or by regulation."  Plaintiffs also

present a draft guidance which, although not a binding regulation, makes clear that "the FDA's

view [is] that the term 'evaporated cane juice' is not the common or usual name of any type of

---

[69] Docket No. 30 ¶ 47.

[70] *Iqbal*, 556 U.S. at 678.

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

1   sweetener, including dried cane syrup."[71]   Plaintiffs allege that the term "evaporated cane juice"

2   therefore should not be used in conjunction with any type of sweetener.   These facts are sufficient

3   to "nudge[]" Plaintiffs' claim that Nestlé's Buitoni Shrimp & Lobster Ravioli violated 21 C.F.R. §

4   102.5(d) "across the line from conceivable to plausible;" no more is required.[72]

### c.   "Naturally Flavored" – Toll House Peanut Butter & Milk Chocolate Morsels

Plaintiffs central allegation here is that Toll House Peanut Butter & Milk Chocolate

Morsels may not be labeled as "Naturally Flavored" because the product contains the alleged

artificial flavor vanillin, in violation of 21 C.F.R. § 101.22.   Section 101.22 provides definitions for

artificial and natural flavors.   Plaintiffs do not provide in their complaint or their opposition which

subsection of 21 C.F.R. § 101.22 governs the use of the term "naturally flavored."   However, 21

C.F.R. § 101.22(i)(1)(i) provides that if the label "makes any direct or indirect representations with

respect to the primary recognizable flavor(s)," then that flavor shall be considered the

"characterizing flavor" and must comply with the restrictions following.   As Nestlé points out, it is

not at all clear from the complaint whether "vanilla" is a "characterizing flavor" of the Toll House

Peanut Butter & Milk Chocolate Morsels.   Plaintiffs must provide further information as to how the

inclusion of artificially flavored vanilla, in conjunction with the product label, violates one of the

restrictions in 21 C.F.R. § 101.22.

### d.   "Antioxidant" – Dark Chocolate Morsels and Dark Chocolate Raisinets

Plaintiffs allege that Dark Chocolate Morsels and Dark Chocolate Raisinets violate 21

C.F.R. § 101.54(g), which covers "antioxidant" nutrient content claims.   As noted previously, the

regulation establishes a set of requirements for labels making "[a] nutrient content claim that

characterizes the level of antioxidant nutrients present in a food."   The labels attached to the

---

[71] FDA, Draft Guidance for Industry, 2009 WL 3288507, at *1.

[72] *Twombly*, 550 U.S. at 547.

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

complaint state the product is a "natural source of antioxidants," but these statements do not "characterize[] the level" of the antioxidants, and thus are not nutrient content claims as defined in Section 101.54. The qualifier "natural," unlike "good," "excellent," and fine,"[73] does not modify the word "source" to indicate the level of the ingredient. Accordingly, Plaintiffs fail to state a claim that these products violated 21 C.F.R. § 101.54(g).

### e.      "0g Trans Fat" Nutrient Content Claims – Coffee-Mate

Against Nestlé's Coffee-Mate product, Plaintiffs allege the claim "0g Trans Fat" is an improper nutrient content claim because the product contains disqualifying levels of saturated fat that exceed the requirements in 21 C.F.R. § 101.13(h)(1). Nestlé contends that the claim should be dismissed because it does not characterize the "amount" of the nutrient. This is incorrect. The statement is an express nutrient content claim because it provides "a direct statement about the level (or range) of a nutrient in [a] food" – that it has no trans fat.[74]

### f.      "Health" Claim – Dark Chocolate Raisinets, Rich Milk Chocolate Cocoa

Plaintiffs target "health claims" made on labels for Dark Chocolate Raisinets ("help to maintain good health") and Rich Milk Chocolate Cocoa ("antioxidants help to protect cells from damage and calcium to build strong bones").[75] Nestlé argues that these claims are not "healthy" nutrient content claims because they are not associated with dietary or nutritional principles and do not imply the levels of a particular nutrient. Nestlé is correct regarding Plaintiffs' claims under 21 C.F.R. 101.65(d), which only applies if the statement is "made in connection with an explicit or implicit statement about a nutrient." As plead, it is unclear whether the statements are made in connection with a nutrient content claim, and so the claims under Section 101.65(d) are dismissed.

---

[73] These are examples provided by 21 C.F.R. § 101.54(b) and an FDA letter cited by Plaintiffs, *See* Docket No. 44, Ex. 4.

[74] *Chacanaca*, 752 F.Supp.2d at 1122 (citing 21 C.F.R. § 101.13(b)(1)).

[75] *See* Docket No. 30 at 28-31.

18

1    But Nestlé's argument fails in relation to Plaintiffs' claims under 21 C.F.R. § 101.14.  That

2 section regulates "health claims" separate and apart from "nutrient content claims," defining

3 "health claims" as "any claim made on the label or in labeling of a food… that expressly or by

4 implication… characterizes the relationship of any substance to a disease or health-related

5 condition."

6    Plaintiffs next allege that Nestlé has promoted its products "as new drugs" under 21 U.S.C.

7 § 321(g)(1) because they are intended to be used in the "cure, mitigation, treatment, or prevention

8 of disease."  Accordingly, they must not be marketed without prior approval from the FDA under

9 21 U.S.C. § 355(a).  The statement "helpful to maintain good health" does not purport to prevent or

10 treat any disease, but is a generalized "health" claim.  In contrast, the claim "antioxidants help to

11 protect cells from damage and calcium to build strong bones" could be interpreted as aiming to

12 mitigate cancerous conditions in cells.  Extrinsic facts presented at a later stage may show that

13 Nestlé's products are not intended to be used, and are not used for this purpose, but the court may

14 not engage in that analysis on a motion to dismiss.

### 6.    Failure to State a Claim – "Misleading" and "False Advertising" Claims

17    Nestlé charges that for many of Plaintiffs' claims, Plaintiffs have not alleged with

18 specificity the facts showing that a reasonable consumer would be deceived by the challenged

19 advertising.  Claims alleging either false advertising or some type of deception, like any other

20 claims sounding in fraud, must meet the requirements of Fed. Civ. P. 9(b).[76]  To state a

21 "misleading" or "false advertising claim" under the UCL, FAL, or CLRA, the plaintiff must show

22 that a "reasonable consumer" would be deceived by the packaging and that plaintiff actually relied

---

[76] *See Bishop v. 7-Eleven*, Case No. 12-CV-2621, 2013 WL 4014174, at *3 (N.D. Cal. Aug. 5, 2013).

19

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

on the packaging and was deceived.[77]  The allegations must rise above a merely speculative level; Plaintiffs must show that members of the public are "likely to be deceived."[78]

Throughout their complaint, Plaintiffs fail to allege either that a "reasonable consumer" would be deceived, or the circumstances in which they themselves read the labels of the named products and interpreted those labels differently, or both.  While regulatory violations might suggest that these statements might be misleading to a reasonable consumer, that alone is not enough to plead a claim under the FAL, CLRA, or the misleading/false advertising prongs of the UCL.[79]  Plaintiffs must connect the dots showing how the alleged misbranding misled plaintiffs in a way that a reasonable consumer would be deceived.  While Plaintiffs may have read nutrient content claims such as "0g Trans Fat" and were misled into thinking the product was overall low in fat, they fail to allege those circumstances here.[80]

### 7.    Restitution/Unjust Enrichment

Plaintiffs' plead a claim for restitution/ unjust enrichment, which they allege is in the alternative.  Restitution is a "quasi-contractual claim in order to avoid unjustly conferring a benefit

---

[77] *See Xybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008); *Kane v. Chobani, Inc.*, Case No. 12-CV-02425-LHK, 2013 WL 3703981, at *10 (N.D. Cal. July 12, 2013); *Viggiano v. Hansen Natural Corp.*, Case No. 12-10747 MMM JCGX, 2013 WL 2005430, at *4 (C.D. Cal. May 13, 2013).

[78] *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

[79] *Cf. Delacruz v. Cytosport, Inc.*, Case No. 11-3532 CW, 2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012) (holding that FDA regulations may provide objective criteria of the misleading nature of the statements, but the touchstone is the "reasonable consumer" test).

[80] *Cf. Wilson v. Frito-Lay N. Am., Inc.*, Case No. 12-1586 SC, 2013 WL 1320468, at *13 (N.D. Cal. Apr. 1, 2013) ("the Court cannot conclude as a matter of law that Plaintiffs' '0 Grams Trans Fat' claims would not be misleading or deceptive to a reasonable consumer"); *Samet*, 2013 WL 3124647, at *8 (while the court declines to hold that 0g Trans Fat as a matter of law would not mislead a reasonable consumer, the plaintiffs did not allege with in sufficient detail how they were actually misled).

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

upon a defendant where there is no valid contract."[81]  Both California and federal courts of this

district are divided as to whether there is an independent cause of action for restitution/unjust

enrichment – some courts have declined to recognize such a cause of action, holding that it is

merely a remedy that rests on a separate claim, while others have permitted it to proceed

independently.[82]  The difference in opinion appears to turn on whether the plaintiff has properly

plead a claim for either quasi-contract or unjust enrichment, and that it would frustrate public

policy concerns to allow the defendant to retain that benefit.[83]  Given that Plaintiffs' quasi-contract

theory rests on the same allegations already covered by their other claims, which also provide for

restitution as a remedy,[84] the claim is "merely duplicative of statutory or tort claims" and must be

dismissed.[85]

### 8.      Violations of Song-Beverly Act and Magnuson-Moss Act

Plaintiffs' complaint alleges violations of the California Beverly-Song Act and the federal

Magnuson-Moss Act.  It is clear that the Magnuson-Moss Act, aimed at written warranties

governed by the FDCA, does not apply here because the statements at issue are not "warranties" as

defined by the Act.  A warranty is defined as a "written affirmation of fact" that the product is

---

[81] *Rosal v. First Fed. Bank of Cal.*, 671 F.Supp.2d 1111, 1113 (N.D. Cal. 2009).

[82] *See Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim"); *cf. McBride v. Boughton,* 123 Cal. App. 4th 379, 387 (2004) (holding that the plaintiff may choose to seek restitution on a quasi-contract theory).  *See also Khasin*, 2012 WL 5471153, at *9 (interpreting unjust enrichment claim as akin to quasi-contract claim and allowing it to proceed); *cf. Brazil v. Dole Food Co., Inc.*, Case No. 12-CV-01831-LHK, 2013 WL 1209955, at *18 (N.D. Cal. Mar. 25, 2013) (ruling that unjust enrichment is not an independent cause of action).

[83] *See McBride*, 123 Cal. App. at 389.

[84] *Brazil,* 2013 WL 1209955, at *18 (the UCL provides restitution as a remedy).

[85] *See, e.g., In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011); *Diacakis v. Comcast Corp.*, Case No. C-11-3002 SBA, 2012 WL 43649, at *6 (N.D. Cal. Jan. 9, 2012).

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

1

2

3

4

5

6

7

8

9

10

**United States District Court**
For the Northern District of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"defect free or will meet a specified level of performance over a specified period of time."[86]  None of the statements challenged by Plaintiffs qualify as such an affirmation.[87]

Plaintiffs' claims under the Song-Berverly Act also are inapposite.  The Act permits a cause of action for damages for a buyer of "consumer goods" who is injured by a breach of warranty.[88]  However, the statute expressly does not apply to "consumables," or "any product that is intended for consumption by individuals."[89]  The products here are clearly products intended for consumption, and Plaintiffs admit as much in their complaint.[90]

As the warranty claims cannot be saved by further amendment, they are dismissed without leave to amend.

**B.      Motion to Strike Class Allegations**

Nestlé separately moves to strike class allegations, alleging that Plaintiffs cannot meet the class action requirements of Rule 23, with the main thrust of their argument being that Plaintiffs' class action complaint is a tangled web of nine separate and unrelated misbranding theories, which are associated with an open-ended list of products that includes ones not named in the complaint.

For their class action allegations to survive, the complaint must make a prima facie showing that Fed. R. Civ. P. 23(a) and 23(b) can be satisfied.  Under Rule 23(a), Plaintiffs must show that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately

---

[86] 15 U.S.C. § 2301(6)(A).

[87] *See Lanovaz,* 2013 WL 675929, at *7; *Jones,* 912 F. Supp. 2d at 904.

[88] Cal. Civ. Code § 1794.

[89] Cal. Civ. Code § 1791(a), (d).

[90] *See* Docket No. 30 ¶ 273.

22

protect the interests of the class."[91]  Rule 23(b)(3), which applies because Plaintiffs seek monetary

damages, further requires that "the questions of law or fact common to class members predominate

over any questions affecting only individual members."[92]

Focusing first on Rule 23(a), the main defect alleged in Plaintiffs' complaint is the lack of

typicality.  Typicality ensures that the class members all suffered the same or similar injury, caused

by the same course of conduct, which was not unique to the named plaintiffs.[93]  In food

misbranding cases, courts have applied the "sufficient similarity" test to determine both typicality

and standing.[94]  As the plaintiff is not required to show she has standing for every injury she

purports to represent, the court finds this test better-suited to determining whether the class

representatives are typical.

The "sufficient similarity" test allows claims to proceed, even if the plaintiff did not

actually buy the other products included in the class, if "product composition is less important" and

"the alleged misrepresentations are sufficiently similar across product lines."[95]  Sufficient

similarity is satisfied when a combination of these factors are satisfied: the challenged products are

of the same kind, they are comprised of largely the same ingredients, and they bear the same

---

[91] Fed. R. Civ. P. 23(a).

[92] Fed. R. Civ. P. 23(b)(3).

[93] *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th Cir. 2011).

[94] *See, Brown,* 913 F. Supp. 2d at 890 (analyzing cases considering sufficient similarity of products under both standing and Rule 23, but ultimately adopting the test to determine the plaintiff's standing to bring the class action).  *See also Cardenas v. NBTY, Inc.,* 870 F.Supp.2d 984, 992-93 (E.D. Cal. 2012) (employing Rule 23 analysis to determine whether plaintiff may assert claims on behalf of purchasers of products she did not purchase); *Forcellati v. Hyland's, Inc.,* 876 F.Supp.2d 1155, 1161 (C.D. Cal. 2012) (observing that the question of whether plaintiff may bring suit based on products not purchased "is better taken under the lens of typicality or adequacy of representation, rather than standing").  As noted above, this court has previously ruled that the Rule 23 class action inquiry is the appropriate setting for applying the sufficient similarity test.  *See Ogden,* 85 F.R.D. 3d 775 (applying the "sufficient similarity" test to the question of typicality).

[95] *Brown,* 913 F. Supp. 2d at 890.

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

alleged mislabeling.[96]  For example, different Dreyer's and Edy's brand ice cream containers, all bearing the label "All Natural," were sufficiently similar to sustain a claim asserting the ice cream actually contained artificial ingredients.[97]  Where product composition is less important to the plaintiff's claim, the central issue becomes "whether the alleged misrepresentations are sufficiently similar across product lines."[98]

Because Plaintiffs have purchased each of the 13 products, the court must evaluate sufficient similarity with regard to each type of alleged mislabeling.  After doing so, the court finds that Plaintiffs cannot be said to be typical of those who purchased all products with the alleged misrepresentative statements, as Plaintiffs suggest.  Plaintiffs' allegations encompass all products with labels containing certain key words (i.e., "health" and "all natural"), or having certain attributes (having the "wrong serving size" or containing "unlawful slack fill"), but does not limit the class to certain product lines that are sufficiently similar in nature.  A "No Sugar Added" claim, for example, might be portrayed on different parts of the package, in different sizes, on wildly different products such as apple juice versus cheese, which would result in very different analysis to determine if the statements were false or misleading.  All of Plaintiffs' claims depend on such context-specific analysis, requiring information about the food composition or actual labels that is

---

[96] *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, Case No. 11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012).

[97] *Id.* at *13.  *See also Colucci v. ZonePerfect Nutrition Co.*, 12-2907-SC, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012) (concluding that plaintiff could proceed with claims on 20 different flavors of nutrition bars because the ingredient lists were very similar, they looked largely the same, they were all within the same category of products, and they all bore the same "All-Natural Nutrition Bars" label); *Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000, 1005-06 (N.D. Cal. 2012) (claims centered around several flavors of at-home smoothie kits but with the same "All Natural" label were sufficiently similar).

[98] *Brown*, 913 F. Supp. 2d at 890.  *See also Koh v. S.C. Johnson & Son, Inc.*, C-09-00927 RMW, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010) (allowing plaintiff to proceed on Shout stain remover claim when he only purchased Windex glass cleaner, because they were from the same environmentally-friendly line and all products had the same Greenlist label touting the same rating system promoting the use of environmentally-responsible ingredients).

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

not presented here.[99]   That information cannot be gleaned from what has been provided, which does not even include the names of the products but are mere "categories" of those products, such as those "labeled or advertised with an antioxidant claim for a nutrient lacking a Daily Value or lacking the minimum Daily Value specified for the claim made," or those "labeled or advertised with 'No Sugar Added' on food intended for use by infants less than two years of age."  Some of the products identified by these statements might not even be false or misleading, and so Plaintiffs cannot hope to limit their claims to only those who suffered the same or similar injury, caused by the same course of conduct by Nestlé.[100]

For largely the same reason, the class presented by Plaintiffs is not ascertainable.  Plaintiffs contend the class is ascertainable because it is comprised of all individuals who have purchased any products containing any of the offending labels.  Plaintiffs further contend that potential class members should "know what they bought."[101]  But it is not evident from Plaintiffs' complaint exactly what products are implicated.  Violations of the Sherman Law, as well as California's consumer protection statutes, are highly dependent on the context in which the statements are presented.  Courts have gone so far as to require plaintiffs to provide the actual labels relied upon.  Without actual labels or product lists, how can potential class members determine whether they have purchased infringing products?  A statement that all people who purchased products

---

[99] For false and misleading food mislabeling claims, courts have even gone so far as to require the plaintiffs to "identify[] or attach[] representative samples of [the] misleading materials" to provide adequate context and sufficiently make out a claim.  *Ries v. Hornell Brewing Co., Inc.*, 5:10-CV-01139-JF/PSG, 2011 WL 1299286 (N.D. Cal. Apr. 4, 2011).

[100] *Ellis,* 657 F.3d at 984.  *See also Red v. Kraft Foods, Inc.*, Case No. CV 10-1028-GW AGRX, 2011 WL 4599833, at *8 (C.D. Cal. Sept. 29, 2011) (class including consumers who were not exposed to the supposedly misleading product labeling claims was improper); *Mazur v. eBay Inc.,* 257 F.R.D. 563, 567 (N.D. Cal. 2009) (class including non-harmed auction winners was "both imprecise and overbroad").

[101] Docket No. 45 at 9.

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

containing "unlawful slack fill" pursuant to 21 C.F.R. 100.100(a) does nothing to inform potential class members.

On the face of the complaint, it is clear that commonality also cannot be satisfied.  While in an individual claim, a plaintiff is free to join whatever claims they may have against a particular defendant,[102] a class action is "an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only,"[103] requiring among other things that the plaintiff establish common questions of law or fact within the class.[104]  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."[105]

Nestlé challenges that Plaintiffs' claims span nine disparate misbranding theories, which plainly involve different legal and factual questions.  Plaintiffs' only response is the conclusory assertion that common questions of law and fact do exist, for example, "May a food manufacturer add sugar (evaporated cane juice) to its product and then label the product as "No Sugar Added?"[106]  But Plaintiffs only example falls flat, because this purported common question applies only to one misbranding theory, not the class action as a whole.  While different products, if

---

[102] *See* Fed. R. Civ. P. 18 ("A party asserting a claim… may join as independent or alternative claims, as many claims as it has against an opposing party").

[103] Schwarzer, Tashima, and Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* §§ 10:250, *et seq.* (The Rutter Group 2012).

[104] *See* Fed. R. Civ. P. 23(a)(2).

[105] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

[106] Docket No. 45 at 16.

26

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE

sufficiently similar, might be certified regarding one or similar misbranding theories, a class action suit involving nine unrelated theories cannot as a matter of law be certified.[107]

## IV.    CONCLUSION

The motion to dismiss is GRANTED-IN-PART.  As explained above, Plaintiffs may submit an amended complaint in accordance with the holdings and reasoning of this order no later than September 2, 2013.

Dated:   August 9, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[107] *Red*, 2011 WL 4599833, at *9 (where class action targeted a number of different misleading statements, the plaintiffs failed to meet the commonality requirement because the "common question" was "too fragmented").

27

Case No.: 5:12-cv-00917-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND MOTION TO STRIKE