1   Ben F. Pierce Gore
    PRATT & ASSOCIATES
2   1871 The Alameda
    Suite 425
3   San Jose, CA 95126
    (408) 429-6506
4   pgore@prattattorneys.com

5   Charles Barrett
    CHARLES BARRETT, P.C.
6   6518 Highway 100
    Suite 210
7   Nashville, TN 37205
    (615) 515-3393
8   charles@cfbfirm.com

9   *Attorneys for Plaintiffs*

10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                        SAN JOSE DIVISION

14

15   JUDE TRAZO and MARIANNA BELLI,          Case No. 12-cv-02272 (PSG)
     individually and on behalf of all others
16   similarly situated,
                                             **FIFTH AMENDED CLASS ACTION
17              Plaintiffs,                   AND REPRESENTATIVE ACTION
                                             COMPLAINT FOR EQUITABLE AND
18   v.                                       INJUNCTIVE RELIEF**

19   NESTLÉ USA, INC.,
                                             JURY TRIAL DEMANDED
20              Defendant.

21

22

23

24

25

26

27

28

Plaintiffs, through their undersigned attorneys, bring this lawsuit against Defendant Nestlé USA, Inc. ("Defendant" or "Nestlé") as to their own acts upon personal knowledge and as to all other matters upon information and belief.

**DEFINITIONS**

1.      "Class Period" is May 4, 2008 to the present.

2.      "Coffee Mate" is collectively Nestlé Coffee Mate Powder (Original), which was purchased by Plaintiffs during the Class Period, and the other flavors: Nestlé Coffee Mate Powder (Hazelnut), Nestlé Coffee Mate Powder (Vanilla Caramel), Nestlé Coffee Mate Powder (Creamy Chocolate), Nestlé Coffee Mate Powder (French Vanilla), Sugar Free Nestlé Coffee Mate Powder (Hazelnut), Sugar Free Nestlé Coffee Mate Powder (Vanilla Caramel), and Sugar Free Nestlé Coffee Mate Powder (French Vanilla).

3.      A picture of the Coffee Mate purchased by Plaintiffs is attached as Exhibit 1 and specific descriptions of the relevant label representations are included below.

4.      All flavors of Coffee Mate make the exact same label "0g Trans Fat" label representation, violate the exact same regulations and are misleading in the same manner as described herein, and are essentially the exact same product, except for flavor.

5.      Plaintiffs reserve the right to supplement this list if evidence is adduced during discovery to show that other flavors of Defendant's Coffee Mate existed during the Class Period which had labels which violate the same provisions of the Sherman Law and have the same label representation, "0g Trans Fat."

**SUMMARY OF THE CASE**

6.      Plaintiffs' case has two distinct facets.  First, the "misbranding" part.  This case seeks to recover for the injuries suffered by the Plaintiffs and the class as a direct result of the Defendant's unlawful sale of misbranded food products. Defendant packaged and labeled its Coffee Mate in violation of California's Sherman Law which adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") and the regulations adopted pursuant to that act.  These violations render Defendant's

food products "misbranded." Defendant's actions violate the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 ("CLRA").

7. Under California law, misbranded food products cannot be legally sold or possessed, have no economic value and are legally worthless. Indeed, the sale or possession of misbranded food products is a criminal act in California.

8. By selling such illegal products to the unsuspecting Plaintiffs, the Defendant profited at the Plaintiffs' expense and unlawfully deprived Plaintiffs of the money they paid to purchase food products that were illegal to sell, possess or resell and had no economic value.

9. The unlawful sale of a misbranded product that was illegal to sell or possess gives rise to causes of action under the UCL and CLRA. In the present case, Plaintiffs were injured by the Defendant's illegal sale of its misbranded Coffee Mate. Plaintiffs paid money to purchase illegal products that were worthless and could not be legally sold or possessed.

10. Plaintiffs were unwittingly placed in a worse legal situation as a result of Defendant's unlawful sale of illegal products to them. Plaintiffs would not have purchased Defendant's Coffee Mate had they known that the products were illegal and could not be lawfully possessed. No reasonable consumer would purchase such a product. The class suffered the same injuries as Plaintiffs due to the class' purchase of Coffee Mate.

11. Defendant has violated the Sherman Law § 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold or offer for sale any food that is misbranded. As discussed below, the illegal sale of a misbranded product to a consumer results in an independent violation of the unlawful prong of the UCL and CLRA that is separate and apart from the underlying unlawful labeling practice that resulted in the product being misbranded. Plaintiffs reasonably relied on the fact that the Defendant's Coffee Mate was legal to sell and possess and that Defendants' labeling and label claims were legal.

12. Due to Defendant's misbranding and sale of Coffee Mate and Plaintiffs' reliance on the Defendants' labels, Plaintiffs lost money by purchasing unlawful products.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13.     Second, the "misleading" part. In addition to being misbranded under the Sherman Law, Coffee Mate has label statements that are misleading and deceptive.  This label statement is "0g Trans Fat."

14.     Prior to purchase, Plaintiffs reviewed the illegal "0g Trans Fat" statement on the labels of each respective Coffee Mate they purchased, reasonably relied, in substantial part, on these misleading statements, and was thereby misled in deciding to buy Coffee Mate.  Plaintiffs were deceived into purchasing Coffee Mate in substantial part because of these label statements and because of these statements believed that Coffee Mate was healthier than other similar products and/or healthier than Coffee Mate without the statement.

15.     Defendant also misled Plaintiffs to believe that Coffee Mate was legal to purchase and possess. Had Plaintiffs known that Coffee Mate was misbranded they would not have bought Defendant's Coffee Mate. Plaintiffs relied (a) on the Defendant's explicit representations that its product had "0g Trans Fat" and was thus healthier than other similar products lacking such statements and/or Coffee Mate without such a statement, and (b) the Defendant's implicit representation based on Defendant's material omission of material facts that Coffee Mate was legal to sell and possess.

16.     Reasonable consumers would be, and were, misled in the same manner as Plaintiffs.

17.     Defendant had a duty to disclose the illegality of its misbranded products because (a) it had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiffs; and (b) the Defendant actively concealed a material fact from the Plaintiffs. The Defendant had a duty to disclose the information required by the labeling laws discussed herein because of the disclosure requirements contained in those laws and because in making its "0g Trans Fat" claim made partial representations that are misleading because other material facts have not been disclosed.

### PARTIES, JURISDICTION AND VENUE

18.     Plaintiff Trazo is a resident of San Jose, California who purchased Defendant's

Coffee Mate in California during the Class Period.

19.     Plaintiff Belli is a resident of San Jose, California who purchased Defendant's Coffee Mate in California during the Class Period.

20.     Defendant Nestlé USA, Inc. is a privately held Delaware corporation with its corporate headquarters and principal place of business in Glendale, California.  Nestlé USA, Inc. sells products under various brand names including Dreyer's brand products.

21.     Defendant is a leading producer of retail food products, including Coffee Mate. It sells its food products to consumers through grocery and other retail stores throughout California and the United States.

22.     California law applies to all claims set forth in this complaint because Nestlé is a California resident and all of the misconduct alleged herein was contrived in, implemented in, and has a shared nexus with California.  The formulation and execution of the unlawful and misleading practices alleged herein, occurred in, or emanated from California.  Accordingly, California has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiffs and all class members.

23.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

24.     This Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

25.     This Court has personal jurisdiction over Defendant because: (i) a substantial portion of the wrongdoing alleged in this complaint occurred in California, (ii) Defendant is authorized to do business in California, (iii) Defendant has sufficient minimum contacts with California, and (iv) Defendant otherwise intentionally availed itself of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of

jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

26.     Because a substantial part of the events or omissions giving rise to these claims occurred in this district and because this Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## BACKGROUND

### A.     Identical California and Federal Law Regulate Food Labeling

27.     Food manufacturers are required to comply with identical state and federal laws and regulations that govern the labeling of food products.  First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

28.     Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health & Safety Code § 110100.

29.     Under both the Sherman Law and FDCA Section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. Cal. Health & Safety Law §§ 110660, 110705; 21 U.S.C. § 343.

30.     In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations.  As described herein, Defendant has violated the following Sherman Law sections:  California Health & Safety Code § 110390 (unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product); California Health & Safety Code § 110395 (unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food); California Health & Safety Code §§ 110398 and 110400 (unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised); California Health & Safety Code § 110660 (misbranded if label is

false and misleading); California Health & Safety Code § 110665 (misbranded if label fails to conform to the requirements set forth in 21 U.S.C. § 343(q)); California Health & Safety Code § 110670 (misbranded if label fails to conform with the requirements of 21 U.S.C. § 343(r)); California Health & Safety Code § 110705 (misbranded if words, statements and other information required by the Sherman Law are either missing or not sufficiently conspicuous); California Health & Safety Code § 110765 (which makes it unlawful for any person to misbrand any food); California Health & Safety Code § 110770 (unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

31.     Plaintiffs' claims are brought for violation of the Sherman Law.

**B.     FDA Enforcement History**

32.     In recent years the FDA has become increasingly concerned that food manufacturers have been disregarding food labeling regulations. To address this concern, the FDA elected to take steps.  In October 2009, the FDA issued a *Guidance for Industry: Letter regarding Point Of Purchase Food Labeling* and on March 3, 2010 the FDA issued "*Open Letter to Industry from [FDA Commissioner] Dr. Hamburg*" to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority.  Additionally, the FDA has sent warning letters to the industry, including many of Defendant's peer food manufacturers as well as a December 4, 2009 Warning Letter to Nestle, Inc., for some of the same types of misbranded labels and deceptive labeling claims described herein.

33.     Defendant did see, or should have seen, these warnings.  Defendant did not change its labels in response to any warning letters.

**SHERMAN LAW AND COFFEE MATE**

**A.     Coffee Mate Is Misbranded Under the Sherman Law**

34.     The label on the package of Coffee Mate violates the Sherman Law and is therefore misbranded.  Defendant sold these misbranded products to Plaintiffs and the class.

35.     The label on the package of Coffee Mate purchased by Plaintiffs states "0g Trans Fat."  All packages of Coffee Mate sold in the Class Period have the same "0g Trans Fat" statement.

36.     "0g Trans Fat" is a nutrient content claim.

37.     21 C.F.R. § 101.13 (h)(l) has been adopted and incorporated by the Sherman Law, Cal. Health & Safety Code § 110100, and provides that:

> If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less … per 50 g (for dehydrated foods that must be reconstituted before typical consumption with water or a diluent containing an insignificant amount, as defined in 101.9(f)(1), of all nutrients per reference amount customarily consumed, the per 50 g criterion refers to the 'as prepared form'), then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for __ content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

38.     Defendant's use of the "0g Trans Fat" label statement violates the Sherman Law because Coffee Mate does not contain the required disclosure statement referring consumers to the nutrition panel for additional information.  This disclosure statement is required pursuant to 21 C.F.R. § 101.13(h) and California law. Defendant's Coffee Mate contains more than 4 grams of saturated fat per 50 grams, and therefore the disclosure statement required by 21 C.F.R. § 101.13(h) and Cal. Health & Safety Code § 110100 is required.

39.     All packages of Coffee Mate sold in the Class Period fail to make the disclosure statement.

40.     Coffee Mate is not a dehydrated food that must be reconstituted before typical consumption with water.

41.     The failure to include the required disclosure statement renders Coffee Mate misbranded under the Sherman Law.

42.     The FDA agrees.  On February 22, 2010, Spectrum Organic Products, Inc. received a warning letter from the FDA.  The letter states, in relevant part:

> In addition, your "Organic All Vegetable Shortening" product is misbranded because your product's label bears a nutrient content claim but fails to bear the

disclosure statement required by 21 CFR 101.13(h). Your product bears the phrase "0 Grams Trans Fat" in two different locations on the principal display panel of the product label. The phrase "0 Grams Trans Fat" meets the definition of a nutrient content claim because it characterizes the product's level of trans fat, which is a nutrient of the type required to be in nutrition labeling (21 CFR 101.13(b)). The Nutrition Facts panel declares the nutrient value of 6 g saturated fat per serving (1 Tbsp). A food that bears a nutrient content claim that contains more than 4 g of saturated fat per serving must bear a disclosure statement on the label (immediately adjacent to the claim) referring the consumer to nutrition information for that nutrient, e.g., "See nutrition information for saturated fat content," as required by 21 CFR 101.13(h)(1); however, the label of your product fails to bear the required disclosure statement.

43.     Defendant's violations of the Sherman Law include Defendant's illegal labeling practices which misbrand Coffee Mate as well as the illegal advertising, marketing, distribution, delivery and sale of Defendant's misbranded Coffee Mate to consumers in California and throughout the United States.  Defendant sold these products to increase its volume of sales and/or market share.

44.     Defendant could have easily complied with the labeling regulations by simply adding a disclosure statement to the front of its package under its "0g Trans Fat" statements.

45.     As a result, consumers, including Plaintiffs and the class, bought products that fail to comply with the mandatory labeling requirements and standards established by law such that the products are misbranded and rendered unfit for sale. These products contained levels of saturated fat the FDA has deemed to be deleterious to health and do not contain the required disclosure statement informing consumers of the levels of saturated fat contained in Defendant's products.

46.     Plaintiffs and the class have been damaged by Defendant's illegal conduct in that they purchased misbranded and worthless products that were illegal to sell or possess based on Defendant's illegal labeling of the products and otherwise lost money.

47.     Plaintiffs reasonably relied on the omission of fact/misrepresentation that Defendant's Coffee Mate was not misbranded under the Sherman Law and were therefore legal to buy and possess.  Plaintiffs would not have purchased Coffee Mate had they known they were illegal to purchase and possess.

48.     Because of the violations of 21 C.F.R. § 101.13 and Sherman Law § 110100, Defendant's products are misbranded under Sherman Law § 110660, Sherman Law § 110670 and Sherman Law § 110705. Defendant's act of selling a misbranded product violates Sherman Law § 110760 which prohibits the sale or possession of misbranded products.

49.     Defendant's sale of misbranded Coffee Mate results in an independent violation of the unlawful prong that is separate from the labeling violation. Plaintiffs have two distinct claims under the unlawful prong. The first arises from Defendant's unlawful "0g Trans Fat" label statement on its Coffee Mate. The second is when Plaintiffs relied on these claims to their detriment when purchasing Defendant's Coffee Mate.  Plaintiffs were injured and have a claim arising from the purchase of a product in reliance on the illegal "0g Trans Fat" labeling claims made by Defendant.  Plaintiffs have been deprived of money in an illegal sale and given a worthless illegal product in return. In addition, due to the law's prohibition of possession of such a product, Plaintiffs have been unwittingly placed by the Defendant's conduct in a legal position that no reasonable consumer would agree to be placed.

**B.      The "0g Trans Fat" Label Statement on Coffee Mate Is Misleading and Deceptive**

50.     Plaintiffs read and relied upon Defendant's front of package "0g Trans Fat" label statement, and Plaintiffs were thus deceived.

51.     Plaintiffs were further unaware that Defendant's Coffee Mate contained saturated fat at levels in the food that, according to the FDA, "may increase the risk of disease or health related condition that is diet related."  Because of Defendant's unlawful and misleading "0g Trans Fat" claim and omitted disclosure statement, Plaintiffs were misled to believe that the product was healthier than other similar products and/or Coffee Mate without such a statement, by containing no appreciable levels of trans fats.

52.     Plaintiffs were misled to believe the products did not contain saturated fat at levels that may increase the risk of disease or health related conditions. Defendant's "0g Trans Fat" label claims and omitted disclosure statement led Plaintiffs to believe that Coffee Mate was a healthier choice than other similar products and/or Coffee Mate without such a statement. In

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

addition, Plaintiffs did not know, and had no reason to know, that Defendant's Coffee Mate was misbranded by the "0g Trans Fat" nutrient claim despite failing to meet the requirements to make those nutrient claims.

53.     21 C.F.R. § 1.21 establishes that failure to disclose material facts is a violation of the disclosure rules and is *per se* "misleading." The saturated fat which Defendant failed to disclose is material.

54.     Defendant repeatedly violated these provisions when it prominently stated "0g Trans Fat" on its labels of Coffee Mate without the mandatory disclosure statement.

55.     The "0g Trans Fat" claim on Coffee Mate is misleading as this product contains disqualifying levels of saturated fat which exceed the disqualifying levels of saturated fat which exceed the 4 gram disclosure threshold.

56.     Pursuant to 21 C.F.R. § 101.13(h), Defendant is prohibited from making the unqualified nutrient claims of "0g Trans Fat" claim on its food products if its products contain fat in excess of 13 grams, saturated fat in excess of 4 grams, cholesterol in excess of 60 milligrams, or sodium in excess of 480mg per 50 grams, unless the product also displays a disclosure statement that informs consumers of the product's fat, saturated fat and sodium levels.

57.     These regulations are intended to ensure that consumers are not misled into the erroneous belief that a product that claims to be low in trans fat, but actually has other unhealthy fat levels, is a healthy or healthier choice, because of the lack of trans fats.

58.     Nevertheless, Defendant's products' labels stated that its products contained "0g Trans Fat" without such a disclosure even though Coffee Mate contain saturated fat in excess of 4 grams per serving.

59.     In October 2009, the FDA issued its FOP Guidance, to address its concerns about front of package labels. Despite the issuance of the 2009 FOP Guidance, Defendant did not remove the improper and misleading "0g Trans Fat" nutrient content claims from its Coffee Mate.

60.     Notwithstanding the Open Letter listed above, Defendant continued to use this improper trans fat nutrient content claim, despite the express guidance of the FDA in the Open

Letter that "claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat [or sodium, cholesterol or total fat], and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel."

61.     Defendant also ignored the FDA's Guidance for Industry, A Food Labeling Guide, which detailed the FDA's guidance on how to make nutrient content claims about food products that contain "one or more nutrients [like total fat at levels] in the food that may increase the risk of disease or health related condition that is diet related." Defendant utilized improper trans fat nutrient claims on the labels of its Defendant's Coffee Mate. As such, these products ran afoul of FDA guidance as well as California and federal law.

62.     The FDA has issued at least nine other warning letters to other companies for the same identical type of improper "0g Trans Fat" nutrient content claims at issue in this case.

63.     This Court has found this exact kind of label representation to be misleading.

64.     "A disqualifying level of, say, saturated fat is four grams per 'reference amount customarily consumed.'" 21 C.F.R. § 101.13(h)(1); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010). If this level is exceeded, a food purveyor is prohibited from making an unqualified claim touting the health benefits of another nutrient in the food. *Id.* This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading." *Id.*

65.     This Court has already held that a disqualifying claim such as Defendant's "0 grams Trans Fat," even if accurate, may be unlawful and misleading. *Wilson v. Frito-Lay North America, Inc.*, 2013 WL 1320468 (N.D. Cal. April 1, 2013)(Plaintiff sufficiently alleged claim that the "0 Grams Trans Fat" statement on bags of potato chips was deceptive because, accompanied by a disclosure of at least one of the ingredients that 21 C.F.R. § 101.13(h)(1) requires to be disclosed, they and other reasonable consumers would think that the statements on the labels make accurate claims about the labeled products' nutritional content when, in fact, they

do not; disqualifying claim such as "0 grams Trans Fat," even if accurate, may be unlawful and misleading).

66.     In *Chacanaca*, Judge Seeborg explained:

> The federal regulatory statute provides for this precise scenario: that is, it categorizes as misleading and therefore prohibited even true nutrient content claims if the presence of another "disqualifying" nutrient exceeds and amount established by regulation. The Agency has by regulation imposed "disqualifying" levels for only four nutrients: total fat, saturated fat, cholesterol, and sodium. 21 C.F.R. §§ 101.13(h)(1), 101.14(a)(4). It is important to note how disqualifying claims work. A disqualifying level of say, saturated fat is four grams per "reference amount customarily consumed." 21C.F.R. § 101.13 (h)(1). If this level is exceeded, a food purveyor is prohibited from making an unqualified claim touting the health benefits of another nutrient in the food. This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading.

*Chacanaca*, 752 F. Supp. 2d at 1122 (emphasis in original).

67.     Despite the FDA's numerous warnings to industry, Defendant continued to sell Coffee Mate bearing improper "0g Trans Fat" nutrient content claim without meeting the requirements to make this claim.

68.     Defendant's conduct misled Plaintiffs because, with Defendant failing to disclose the high saturated fat, Plaintiffs were misled into believing Defendant's product to be a healthier choice than other similar products and/or Coffee Mate without such a statement.  Plaintiffs are conscious of the healthiness of the products they purchase, and Defendant's unlawful statements and omitted mandatory disclosures deprived Plaintiffs of the ability to take into account those foods' contributions, or not, to Plaintiffs total dietary composition. Defendant concealed the deleterious attributes of its food, and Plaintiffs were misled and deceived, both by Defendant's statements of the healthy attributes ("0g Trans Fat") and failure to disclose the deleterious food attributes (saturated fat over 4g). Plaintiffs were misled by the Defendant's unlawfully prominent display of the ostensible good traits of its product, and unlawful failure to disclose the bad.

69.     Plaintiffs reasonably relied on the "0g Trans Fat" label representation when making their purchase decisions and were misled by the "0g Trans Fat" representations as described below.

70.     Plaintiffs would not have purchased Coffee Mate had they known the truth about these products, i.e. that the products failed to only make positive contributions to Plaintiffs diet and that the products contain one or more nutrients like total saturated fat at levels in the food that increased the risk of disease and/or dietary health related conditions and that Coffee Mate was not "healthier" than other similar products.  Plaintiffs had other food alternatives that satisfied such standards and Plaintiffs also had cheaper alternatives.

71.     Reasonable consumers would have been misled in the same identical manner as Plaintiffs.  A reasonable consumer would be unaware that Defendant's Coffee Mate contained saturated fat at levels in the food that, according to the FDA, "may increase the risk of disease or health related condition that is diet related."  Because of Defendant's unlawful and misleading "0g Trans Fat" claim and omitted disclosure statement, a reasonable consumer would be misled to believe that the product was healthier than other similar by containing no appreciable levels of trans fats.

72.     A reasonable consumer would be misled to believe the products did not contain fat at levels that may increase the risk of disease or health related conditions. Defendant's "0g Trans Fat" label claims and omitted disclosure statement would lead reasonable consumers to believe that Coffee Mate was a healthier choice than other similar products and/or Coffee Mate without such a statement.

73.     Defendant's unlawful failure to use the mandatory disclosure is actionable. Plaintiffs were unlawfully misled to believe that the products were low in fat by the "0g Trans Fat" statement, and, as a result, they purchased Coffee Mate. Plaintiffs were misled and deceived through the very means and methods the FDA sought to regulate.

74.     Plaintiffs and the class would not have purchased Coffee Mate had they not been misled by Defendant's unlawful "0g Trans Fat" claims and been properly informed by Defendant of the deleterious attributes of those products, and had they otherwise not have been improperly misled and deceived as stated herein.

### PLAINTIFFS AND COFFEE MATE

75.     Plaintiffs care about the nutritional content of food and seek to maintain a healthy diet.

76.     During the Class Period, Plaintiffs each spent more than $25.00 on Coffee Mate.

77.     Plaintiffs read and reasonably relied on the labels as described herein when buying Coffee Mate.  Plaintiffs relied on Defendant's labeling and based and justified the decision to purchase Defendant's products, in substantial part, on these labels.

78.     At point of sale, Plaintiffs did not know, and had no reason to know, the truth about Coffee Mate as described herein, and the fact Coffee Mate was misbranded as set forth herein.  Plaintiffs would not have bought the products had they known the truth about them.

79.     After Plaintiffs learned that Defendant's Coffee Mate was falsely labeled, Plaintiffs stopped purchasing them.

80.     As a result of Defendant's actions, Plaintiffs and thousands of others in California and throughout the United States purchased Coffee Mate.

81.     Defendant's labeling as alleged herein is false and misleading and was designed to increase sales of the products at issue.  Defendant's misrepresentations are part of its systematic labeling practice and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to buy Coffee Mate.

82.     A reasonable person would also attach importance to whether Defendant's products were "misbranded," *i.e.*, legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiffs would not have purchased Defendant's products had they known they were not capable of being legally sold or held.

83.     The flavors of Coffee Mate sold by Defendant during the Class Period are essentially the same product as, except for flavor, including making the same "0g Trans Fat" statement, are misbranded in the same way (saturated fat content is too high), misleading in the same way (no required disclaimer), and violate the same regulations in the same manner as described herein.

## DEFENDANT HAS VIOLATED CALIFORNIA LAW

84.     Defendant has violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

85.     Defendant has violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold, sell or offer to sell any falsely advertised food.

86.     Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

87.     Defendant has violated California Health & Safety Code § 110660 because its labeling is false and misleading in one or more ways, as follows:

        a.      Defendant's Coffee Mate are misbranded under California Health & Safety Code § 110665 because its labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto;

        b.      Defendant's Coffee Mate are misbranded under California Health & Safety Code § 110670 because its labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto; and

        c.      Defendant's Coffee Mate are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on its labeling either are missing or not sufficiently conspicuous.

88.     Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, advertise, distribute, hold, sell or offer for sale, any food that is misbranded.

89.     Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

90.     Defendant has violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

## CLASS ACTION ALLEGATIONS

91.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following "class:"

> All persons in the United States since May 4, 2008 who purchased Nestlé Coffee
> Mate with labels that state "0g Tran Fat"

92.     The following persons are expressly excluded from the class:  (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

93.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

94.     Numerosity:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the class numbers in the thousands and that joinder of all class members is impracticable.

95.     Common Questions Predominate:  This action involves common questions of law and fact applicable to each class member that predominate over questions that affect only individual class members.  Thus, proof of a common set of facts will establish the right of each class member to recover.  Questions of law and fact common to each class member include, just for example:

a.     Whether Coffee Mate is misbranded under the Sherman Law;

b.     Whether Defendants violated the Sherman Law;

c.     Whether Defendant made unlawful and/or misleading claims with respect to its Coffee Mate sold to consumers;

d.     Whether Defendant engaged in unlawful and misleading, unfair or deceptive business practices by failing to properly package and label its Coffee Mate sold to consumers;

1

e.    Whether Defendant violated California Bus. & Prof. Code § 17200 *et seq.*, California Bus. & Prof. Code § 17500 *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and the Sherman Law;

2

3

f.    Whether Plaintiffs and the class are entitled to equitable and/or injunctive relief; and

4

5

g.    Whether Defendant's unlawful and misleading, unfair and/or deceptive practices harmed Plaintiffs and the class.

6

7    97.    Typicality:  Plaintiffs' claims are typical of the claims of the class because

Plaintiffs bought Defendant's Coffee Mate during the Class Period.  Defendant's unlawful,

8

misleading, unfair and/or fraudulent actions concern the same business practices described herein

9

irrespective of where they occurred or were experienced.  Plaintiffs and the class sustained similar

10

injuries arising out of Defendant's conduct in violation of California law.  The injuries of each

11

member of the class were caused directly by Defendant's wrongful conduct.  In addition, the

12

factual underpinning of Defendant's misconduct is common to all class members and represents a

13

common thread of misconduct resulting in injury to all members of the class.  Plaintiffs' claims

14

arise from the same practices and course of conduct that give rise to the claims of the class

15

members and are based on the same legal theories.

16

17    98.    Adequacy:  Plaintiffs will fairly and adequately protect the interests of the class.

Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to

18

the interests of the class members.  Plaintiffs have retained highly competent and experienced

19

class action attorneys to represent their interests and those of the members of the class.  Plaintiffs

20

and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously

21

litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to

22

the class members and will diligently discharge those duties by vigorously seeking the maximum

23

possible recovery for the class.

24

25    99.    Superiority:  There is no plain, speedy or adequate remedy other than by

maintenance of this class action.  The prosecution of individual remedies by members of the class

26

will tend to establish inconsistent standards of conduct for Defendant and result in the impairment

27

of class members' rights and the disposition of its interests through actions to which they were

28

not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

100.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or equitable relief with respect to the class as a whole.

101.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

102.    Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Business and Professions Code § 17200 *et seq*. - Unlawful Business Acts and Practices**

103.    Plaintiffs incorporate by reference each allegation set forth above.

104.    Defendant's conduct constitutes unlawful business acts and practices.

105.    Defendant sold Coffee Mate in California and the United States during the Class

Period.

106.    Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Law.

107.    Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

108.    Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of Defendant's violations of § 17500 *et seq.*, which forbids untrue and misleading advertising.

109.    Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*

110.    Defendant sold Plaintiffs and the class Coffee Mate that were not capable of being sold or held legally and which were legally worthless.

111.    As a result of Defendant's illegal business practices, Plaintiffs and the class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any class member any money paid for Coffee Mate.

112.    Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiffs and the class.

113.    As a result of Defendant's conduct, Plaintiffs and the class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Coffee Mate by Plaintiffs and the class.

## SECOND CAUSE OF ACTION

### Business and Professions Code § 17200 *et seq.* - Unfair Business Acts and Practices

114.    Plaintiffs incorporate by reference each allegation set forth above.

115.    Defendant's conduct as set forth herein constitutes unfair business acts and

practices.

116.    Defendant sold Coffee Mate in California and the United States during the Class Period.

117.    Plaintiffs and members of the class suffered a substantial injury by virtue of buying Defendant's Coffee Mate that they would not have purchased absent Defendant's illegal conduct.

118.    Defendant's deceptive marketing, advertising, packaging and labeling of its Coffee Mate and its sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

119.    Defendant sold Plaintiffs and the Coffee Mate that were not capable of being legally sold or held and that were legally worthless.

120.    Plaintiffs and the class who purchased Defendant's Coffee Mate had no way of reasonably knowing that the products were misbranded and were not properly  marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

121.    The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefore.  Defendant's conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiffs and the class.

122.    As a result of Defendant's conduct, Plaintiffs and the class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Coffee Mate by Plaintiffs and the class.

### THIRD CAUSE OF ACTION

**Business and Professions Code § 17200 *et seq*. - Fraudulent Business Acts and Practices**

123.    Plaintiffs incorporate by reference each allegation set forth above.

124.   Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200 *et seq.*

125.   Defendant sold Coffee Mate in California and the United States during the Class Period.

126.   Defendant's misleading marketing, advertising, packaging and labeling of Coffee Mate and misrepresentation that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiffs and members of the class were deceived.  Defendant has engaged in fraudulent business acts and practices.

127.   Defendant's fraud and deception caused Plaintiffs and the class to purchase Defendant's Coffee Mate that they would otherwise not have purchased had they known the true nature of those products.

128.   Defendant sold Plaintiffs and the class Coffee Mate that were not capable of being sold or held legally and that were legally worthless.

129.   As a result of Defendant's conduct as set forth herein, Plaintiffs and the class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Coffee Mate by Plaintiffs and the class.

**FOURTH CAUSE OF ACTION**

**Business and Professions Code § 17500 *et seq*. - Misleading and Deceptive Advertising**

130.   Plaintiffs incorporate by reference each allegation set forth above.

131.   Plaintiffs assert this cause of action for violations of California Business and Professions Code § 17500 *et seq.* for misleading and deceptive advertising against Defendant.

132.   Defendant sold Coffee Mate in California and the United States during the Class Period.

133.   Defendant engaged in a scheme of offering Defendant's Coffee Mate for sale to Plaintiffs and members of the class by way of, *inter alia*, product packaging and labeling, and

other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Coffee Mate.  Defendant's advertisements and inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §17500 *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Coffee Mate and are statements disseminated by Defendant to Plaintiffs and the class that were intended to reach members of the class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

134.    In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendant's Coffee Mate.  Plaintiffs and the class necessarily and reasonably relied on Defendant's materials, and were the intended targets of such representations.

135.    Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiffs and the class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant's Coffee Mate in violation of the "misleading prong" of California Business and Professions Code § 17500 *et seq.*

136.    As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500 *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the class.  Misbranded products cannot be legally sold or held and are legally worthless.

137.    Plaintiffs and the class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Coffee Mate by Plaintiffs and the class.

## FIFTH CAUSE OF ACTION

**Business and Professions Code § 17500 *et seq*. - Untrue Advertising**

138.   Plaintiffs incorporate by reference each allegation set forth above.

139.   Plaintiffs assert this cause of action against Defendant for violations of California Business and Professions Code § 17500 *et seq.*, regarding untrue advertising.

140.   Defendant sold Coffee Mate in California and the United States during the Class Period.

141.   Defendant engaged in a scheme of offering Defendant's Coffee Mate for sale to Plaintiffs and the class by way of product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendant's Coffee Mate. Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Business and Professions Code §17500 *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Coffee Mate, and are statements disseminated by Defendant to Plaintiffs and the class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

142.   In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Coffee Mate, and falsely misrepresented the nature of those products. Plaintiffs and the class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

143.   Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiffs and members of the class by obfuscating the contents, nature and quality of Defendant's Coffee Mate in violation of the "untrue prong" of California Business and Professions Code § 17500.

144.   As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500 *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the class. Misbranded products cannot be legally sold or held and are legally

worthless.

145.     Plaintiffs and the class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Coffee Mate by Plaintiffs and the class.

**SIXTH CAUSE OF ACTION**

**Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*.**

146.     Plaintiffs incorporate by reference each allegation set forth above.

147.     This cause of action is brought pursuant to the CLRA. Defendant's violations of the CLRA were and are willful, oppressive and fraudulent, thus supporting an award of punitive damages.

148.     Plaintiffs and the class are entitled to actual and punitive damages against Defendant for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the class are entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the class, ordering payment of costs and attorney's fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

149.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

150.     Defendant sold Coffee Mate in California and in the United States during the Class Period.

151.     Plaintiffs and members of the class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

152.     Defendant's Coffee Mate were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

153.     By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5), of the CLRA, because Defendant's conduct constitutes unfair methods

of competition and unfair or fraudulent acts or practices, in that it misrepresents the particular ingredients, characteristics, uses, benefits and quantities of the goods.

154.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant misrepresents the particular standard, quality or grade of the goods.

155.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant advertises goods with the intent not to sell the goods as advertised.

156.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant represents that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

157.    Plaintiffs request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If Defendant is not restrained from engaging in these practices in the future, Plaintiffs and the class will continue to suffer harm.

158.    Pursuant to Section 1782(a) of the CLRA, on June 25, 2012, Plaintiffs' counsel served Defendant with notice of Defendant's violations of the CLRA.  As authorized by Defendant's counsel, Plaintiffs' counsel served Defendant by certified mail, return receipt requested. Defendant has not responded.

159.    Defendant was willful, oppressive and fraudulent, thus supporting an award of punitive damages.

160.    Consequently, Plaintiffs and the class will be entitled to actual and punitive damages against Defendant for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code

§ 1782(a)(2), Plaintiffs and the class will be entitled to an order enjoining the above described acts and practices, providing restitution to Plaintiffs and the class, ordering payment of costs and attorney's fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

### SEVENTH CAUSE OF ACTION

### Breach of Implied Warranty

161.    Plaintiffs incorporate by reference each allegation set forth above.

162.    Implied in the purchase of the Coffee Mate products by Plaintiffs and the Class is the warranty that the purchased products are legal and can be lawfully resold.

163.    Defendant knowingly and intentionally misbranded Coffee Mate products.

164.    Defendant knew or should have known that those Coffee Mate products were illegal.

165.    When Defendant sold those products it impliedly warranted that the products were legal and could be lawfully resold.

166.    Plaintiffs would not have knowingly purchased products that were illegal and unsellable and which subjected Plaintiffs to criminal prosecution.

167.    No reasonable consumer would knowingly purchase products that are illegal and unsellable and subject a consumer to criminal prosecution.

168.    The purchased Coffee Mate products were unfit for the ordinary purpose for which Plaintiffs and the Class purchased them.

169.    In fact, these Coffee Mate products were economically worthless.

170.    As a result, Plaintiffs and the Class were injured through their purchase of an unsuitable, useless, illegal, and unsellable product.

171.    By reason of the foregoing, Plaintiffs and the Class were damaged in the amount they paid for Coffee Mate products.

### EIGHTH CAUSE OF ACTION

**Restitution Based on Unjust Enrichment/Quasi-Contract**

172.    Plaintiffs incorporate by reference each allegation set forth above.

173.    As a result of Defendant's fraudulent and misleading labeling, advertising, marketing and sales of Defendant's Coffee Mate products Defendant was enriched at the expense of Plaintiffs and the class.

174.    Defendant sold misbranded Coffee Mate products to Plaintiffs and the class that were not capable of being sold or held legally and which were legally worthless.  It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiffs and the class, in light of the fact that the products were not what Defendant purported them to be.  Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the class.

175.    As a direct and proximate result of Defendant's actions, Plaintiffs and the class have suffered damages in an amount to be proven at trial.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury of their claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and on behalf of the general public, pray for judgment against Defendant as follows:

A.    For an order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the class;

B.    For an order awarding, as appropriate, damages, or restitution to Plaintiffs and the class for all causes of action;

C.    For an order requiring Defendant to immediately cease and desist from selling its Coffee Mate listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.    For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.      For an order awarding attorney's fees and costs;

F.      For an order awarding punitive damages;

G.      For an order awarding pre-and post-judgment interest; and

H.      For an order providing such further relief as this Court deems proper.


Dated:  July 28, 2015.

                         Respectfully submitted,


/s/  *Charles Barrett*
Charles Barrett
CHARLES BARRETT, P.C.
6518 Hwy. 100, Suite 210
Nashville, TN 37205
(615) 515-3393
charles@cfbfirm.com

Ben F. Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
(408) 429-6506
pgore@prattattorneys.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have filed and served through the Court's ECF system a true and correct copy of the foregoing on July 28, 2015.

/s/  *Charles Barrett*